BROTHERHOOD OF LOCOMOTIVE EN-
GINEERS SECURITIES CORPORATION
OF NEW YORK v. W. L. SHEPHERD LUM-
BER CO. et al.

No. 6078.

Circuit Court of Appeals, Fifth Circuit.

June 30, 1931.

Rehearing Denied Aug. 7, 1931.

John F. Burket, of Sarasota, Fla., and Maxwell Brandwene, of New York City (Irvine J. Shubert, of New York City, of counsel; Szold, Perkins & Brandwene, of New York City, on the brief), for appellant.

H. F. Crenshaw, of Montgomery, Ala., H. C. Tillman, of Tampa, Fla., Whitley P. McCoy, of University, Ala., and T. M. Shackleford, Jr., of Tampa, Fla. (N. G. Robertson, of Sarasota, Fla., Shackleford, Ivy, Farrior & Shannon and Sutton, Tillman & Reeves, all of Tampa, Fla., Rushton, Crenshaw & Rushton, of Montgomery, Ala., and N. G. & John Fite Robertson, of Sarasota, Fla., on the brief), for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This is an appeal by a single defendant from a decree rendered against this defendant and others. Appellees move to dismiss because of the failure to join the other two defendants against whom the decree ran, asserting that the decree was joint and can only be jointly appealed from, invoking the rule in Hardee v. Wilson, 146 U. S. 179, 13 S. Ct. 39, 36 L. Ed. 933; Davis v. Mercantile Trust Co., 152 U. S. 590, 14 S. Ct. 693, 38 L. Ed. 563; Beardsley v. Arkansas & L. R. Co., 158 U. S. 123, 15 S. Ct. 786, 39 L. Ed. 919; American Baptist Home Mission v. Barnett (C. C. A.) 26 F.(2d) 350, 351.

Appellant defends against the motion, asserting that this is a case "where the respective interests of several defendants who are affected by a judgment or decree against all of them are separate and different, one of them may appeal without joining the others." Orleans-Kenner Electric R. Co. v. Dunbar (C. C. A.) 218 F. 344, 345.

■ We agree with appellant that this is such a case and that the motion should be denied. The suit had for its object the bringing to book of defendant Price and Price Company for their dealings ex maleficio with plaintiff, and to compel them to account for properties in which plaintiff had an interest wrongfully concealed from and denied to it. The brotherhood, appellant here, was joined in the suit for the single purpose of subjecting to the satisfaction of any judgment plaintiff might obtain against Price the excess over the brotherhood's indebtedness of the securities deposited with it by Price.

The decree established in favor of plaintiff an absolute liability against Price and Price Company. It placed a conditional obligation upon the brotherhood to surrender the securities which it held in the event Price did not pay the judgment. The Prices were content to abide the decree against them. Neither that decree nor any of the record pertaining to it is brought here for revision.

Here is involved the sole question of the correctness as between plaintiff and the brotherhood of that part affecting them alone. The decree is severable in fact and in law. City National Bank of Fort Worth v. Hunter, 129 U. S. 557, 9 S. Ct. 346, 32 L. Ed. 752; Orleans-Kenner Electric R. Co. v. Dunbar (C. C. A.) 218 F. 344; Winters v. U. S., 207 U. S. 565, 28 S. Ct. 207, 52 L. Ed. 340.

■ Appellant on its part raises the preliminary question that the court below erroneously assumed jurisdiction over it, and that because it did the judgment should be reversed and the cause dismissed.

Without reviewing the tortuous course which the record has taken with its stipulations and continuances, its affidavits and denials, we think it plainly appears that there never was any jurisdictional question involved; that there was merely a question of venue which not only can be but is easily waived, and that it would be a sticking in the bark to find that appellant has managed by stipulations, appearances, motions, and orders, agreed and consented to, to take its part in this mass of complicated proceedings, while maintaining a precarious but safe balance on the fence just beyond the court's power to reach it. Substantial and vigorous proceedings such as occurred here do not go so daintily, and there can be no doubt that in the brush of them at some place in the proceedings appellant fell or was pushed off of its precarious perch.

Coming to the merits of the case, it appears to us to be one of those cases in which the chancellor with an eye single to bringing about substantial justice has reached the decision per saltum, seeing not at all, or only dimly and with the tail of his eye, the many obstacles which really stand in the way. A case in which finding that plaintiff has been grievously defrauded, the chancellor determining that no artifice nor subterfuge shall perpetuate the wrong, lays the ax to the root of the tree, dislodging from its branches in the fall of it at once the just and the unjust. Having concluded that Price has acted faithlessly toward his trust, and having formed the opinion of him that he is resourceful and determined in giving effect to his fraudulent aims, the chancellor, we think, too readily and upon too slight evidence found that the $100,000 note under which the brotherhood claims to hold the collaterals in question was acquired by it not in due course and before the filing of plaintiff's suit, but afterward and for the purpose of defeating plaintiff's just claim upon the property of which Price had defrauded it.

■ We do not so read the record. We think it plain that, whatever facts may be developed on another trial, the present record does not permit of any other conclusion than that the $100,000 note was acquired by the brotherhood in due course and for value some time before this suit was brought, and that it owned the note as a valid subsisting obligation on July 12 when the new collateral note was executed. The collateral agreement attached to this note was, apart from Price's testimony that it was intended that the attached collaterals should secure both of the notes then held by the brotherhood, broad enough and comprehensive enough in its terms and of its own force to place the collaterals back of both of appellant's notes.

The collateral agreement attached to this note as it bears upon the issue here read: "Having deposited with the said Company as collateral security for the payment of this and all other liabilities of the undersigned to the said Company due or to become due, or which may hereafter be contracted or existing, whether incurred directly or indirectly by the undersigned to the said Company including as well promissory notes, bills of exchange and other evidences of indebtedness in writing made, endorsed, or accepted by the undersigned and purchased or owned by said company."

While we can and do agree with appellees that it is the intention of the maker which

must be sought in the circumstances surrounding the transaction and the terms of the collateral agreement, and that collateral pledged with and to a specific note will not be considered in the absence of adequate terms of appropriation pledged to secure other notes of the maker acquired by the pledgee not directly from him but indirectly from others, we think it admits of no question but that the collateral agreement of July 12, by the force of its language and without resort either to interpretation or construction of it or the parol evidence offered in support, plainly declares an intent which the law will take hold of, and give effect to, to place all of the collateral pledged with it behind any indebtedness of the maker held by the pledgee. Citizens' Bank & Trust Co. v. Thornton (C. C. A.) 174 F. 752; Commercial & Savings Bank v. Lumber Co. (C. C.) 194 F. 732; Mulert v. Nat. Bank of Tarentum (C. C. A.) 210 F. 857.

Since we have found upon the record as it now stands that the appellant became the owner in due course of the $100,000 note before this suit was filed, and that such note was actually owned by it and in its possession when the collateral agreement of July 12 was executed, it would be, but for the fact of another trial, unnecessary to notice the claim of the appellant that, even if it were a fact that appellant acquired this note after the suit, the decree of the court was wrong in subjecting other collateral than the Cummer notes to plaintiff's claim. We think we should say that, if upon a retrial it should appear that the $100,000 note was in fact acquired not before, but after, the filing of this suit, and because thereof appellant's claim to the collateral as to the Cummer notes should be found to be subordinate to plaintiff's claim, appellant would still be entitled to hold the balance of the collateral other than the Cummer note free from plaintiff's claim, for plaintiff's bill does not, nor could it, assert any lien or charge upon collateral in which plaintiff never had nor claimed an interest.

The judgment of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

On Application for Rehearing.

PER CURIAM.

We think it plainly enough appears from the opinion that the proceeds of the Cummer note collected by appellant after this suit was filed stand as to plaintiff's claim in the same case as the note itself stood before collection, and that nothing in the paragraph complained of by appellee undertakes to at all determine the rights of plaintiff as to collateral other than the Cummer notes and their proceeds, either upon the theory of marshaling or in the event plaintiff should prove that the $100,000 note had been paid.

In deference to appellee's apprehension, however, we in overruling its motion for rehearing, directly say so.

The motion for rehearing is denied.