**WABASH RY. CO. v. BRIDAL.**

No. 10851.

Circuit Court of Appeals, Eighth Circuit.

Jan. 15, 1938.

Rehearing Denied Feb. 12, 1938.

Homer Hall, of St. Louis, Mo. (N. S. Brown, of St. Louis, Mo., on the brief), for appellant.

Roberts P. Elam, of St. Louis, Mo. (Mark D. Eagleton, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

Appellee, as plaintiff, brought this action in the court below to recover damages for personal injuries alleged to have been sustained by him while he was in the employ of the defendant as a railway brakeman. The petition as originally filed, after alleging that the defendant was engaged in the business of owning and operating a system of railroads as a common carrier in interstate commerce and for such purpose was doing business in the state of Missouri, with an office and place of business in the city of St. Louis, alleged: "Plaintiff further states that on or about the 12th day of June, 1930, he was in the employ of the defendant, working at or near Bloomfield, Iowa, engaged in the business of handling and switching defendant's railroad cars; that plaintiff while in the performance of his duty was upon a car; that while he was thereon, and while he was using a handbrake, said handbrake did fail to properly operate and the wheel thereof did spin and turn, causing plaintiff to be thrown from said car and injured as hereinafter described, all of which occurred as a result of the defendant's violation of the laws of the United States in such cases made and provided, and the amendments thereof." He asked for judgment in the sum of $45,000.

This petition was filed April 8, 1932, and on April 16, 1932, summons was served as shown by the marshal's return, upon Walter S. Franklin, Receiver for the Wabash Railway Company. On May 5, 1932, the defendant appeared specially and moved to quash the service of this summons because it had been served upon the receiver, and not upon an officer of the corporation. Plaintiff confessed this motion on May 9, 1932, and on his application an alias summons issued returnable May 29, 1932. Alias summons issued, but by reason of an apparent clerical error it was made returnable April 29th, although issued on May 9th. Defendant again entered special appearance and moved to quash, and plaintiff on June 8, 1932, confessed this motion and on his application pluries summons issued June 8, 1932, returnable June 28, 1932. This summons, as shown by the marshal's return, was served on the defendant in the city of St. Louis, by delivering a true and correct copy of the summons, with copy of the petition, to Walter Franklin, president of the defendant company. The summons was in the usual form and required the defendant to plead, answer, or demur on or before the twentieth day after service.

On June 27, 1932, before the return day, the defendant appearing specially, moved to dismiss the action and to quash

the service and return for want of jurisdiction, basing its motion upon the ground that plaintiff pretended to state a cause of action under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and the Safety Appliance Act, 45 U.S.C.A. § 1 et seq., and that it was not suable in the District of Missouri because not doing business therein and not being a resident or citizen thereof. This motion, although filed, was not urged nor brought on for hearing, and on September 8, 1932, plaintiff filed a motion to strike defendant's motion to dismiss. On November 7, 1932, both of these motions were submitted. Nothing further seems to have been done in the matter until May 29, 1933, at which time plaintiff, by leave of court, filed an amended petition, and the court at that time ordered "that the submission of defendant's motion to dismiss cause for want of jurisdiction, as well as submission of plaintiff's motion to strike said motion of defendant from files, be, and the same are hereby vacated and set aside."

In his amended petition filed May 29, 1933, plaintiff specifically alleged that at the time of receiving his injuries he was engaged in the business of handling and moving defendant's train and railroad cars, and that he and defendant were engaged in interstate commerce and transportation at said time.

The next proceeding taken was on July 6, 1933, when defendant, appearing specially, filed its motion to dismiss for want of jurisdiction and to quash the summons and return, the jurisdiction of the court being challenged on the ground that plaintiff "attempts and pretends in said amended petition to state a cause of action under the provisions of Acts of Congress known as the Federal Employer's Liability Act and the Safety Appliance Act, and attempts and pretends to create and confer jurisdiction upon this court by alleging in his said amended petition that defendant is now 'engaged in the business of owning and operating a system of railroads as a common carrier of passengers, goods and freight for hire in commerce between the several states of the United States, and as such and for such purposes defendant at all said times did and now does business in the State of Missouri, with an office and place of business in the City of St. Louis, Missouri,' and said petition further alleges that the injuries complained of were received by plaintiff at or near Bloomfield, Iowa, and not within the Eastern District of Missouri, and the defendant alleges and shows to the court that the allegation of plaintiff's amended petition that the defendant now does such business in the State of Missouri, and for such purposes has an office and place of business in the City of St. Louis, Missouri, was and is false," etc.; that the defendant was not a resident of the district or state of Missouri, but was a corporation organized and existing under the laws of the state of Indiana and was therefore a citizen and resident of that state and not of the state of Missouri.

The motion does not seem to have been brought on for hearing until October 16, 1934, when it was overruled, and thereafter, and on April 21, 1936 more than four years after the action had been commenced defendant, appearing specially and reserving its objections to the jurisdiction of the court, filed an amended answer, in which it challenged the court's jurisdiction on the same grounds set out in its motion to quash the service of summons and dismiss the action. It also controverted the allegations of the plaintiff's petition, pleaded contributory negligence, assumption of risk, and denied that plaintiff at the time of receiving his injuries was engaged in interstate transportation. When the original answer was filed, what allegations it contained, and whether the defendant therein appeared generally and pleaded to the merits of plaintiff's cause of action, do not appear.

The case was tried to a jury, resulting in a verdict in favor of the plaintiff for $14,000. From the judgment entered thereon defendant has perfected this appeal and seeks reversal on the grounds (1) that the court did not have jurisdiction over the defendant in the original action, as the plaintiff did not allege diversity of citizenship and it was not brought in the district where the defendant resided; (2) that, being a resident of the state of Indiana, it could not be sued in the District Court of Missouri for a violation of the Safety Appliance Act in the state of Iowa, even though it were doing business in the state of Missouri; (3) that the original petition was based upon the common-law doctrine of master and servant, unaffected by the Federal Employers' Liability Act, and it was not alleged in the original petition that the defendant or the plaintiff was engaged in interstate commerce at the time plaintiff received his injuries, and

hence, when he filed his amended petition alleging that he and the defendant were at the time engaged in interstate commerce, he pleaded a new cause of action which was barred by the two-year statute prior to the filing of his amendment; (4) that the railway company was not doing business in the state of Missouri when plaintiff commenced his action under the Federal Employers' Liability Act, and the court had no jurisdiction of it, and hence its plea to the jurisdiction should have been sustained; (5) that the court should have directed a verdict for defendant because plaintiff failed to prove that at the time of receiving his injuries he was engaged in interstate commerce, or in work so closely related thereto as to be a part of it; (6) that the court erred in charging the jury that plaintiff and defendant were engaged in interstate transportation at the time plaintiff received his injuries. Other alleged errors are not, we think, of sufficient substance to warrant consideration.

The original petition contained no specific allegation that at the time plaintiff received his injuries he and the company were engaged in interstate commerce. It did not allege diversity of citizenship, but it alleged that the injury occurred by reason of the violation of federal statutes by the company. Did the court have jurisdiction over the defendant in the original action?

It appears from the undisputed evidence that at the time of the institution of plaintiff's action, and at the time he filed his amended petition, defendant was a corporation organized under the laws of Indiana, but that it was licensed to do business in the state of Missouri, and owned railway property therein. The pluries summons was served on the president of the defendant company in the city of St. Louis, where it maintained offices and where the president resided. The original petition disclosed that the action was based upon an alleged violation of the laws of the United States, and it appeared that the amount in controversy exceeded $3,000, so that the District Court had general jurisdiction of the cause of action regardless of the domicile or citizenship of the parties. Clark v. Southern Pac. Co., C.C., 175 F. 122; Smith v. Detroit & T. S. L. R. Co., C.C., 175 F. 506; Colasurdo v. Central R. R., C.C., 180 F. 832, affirmed 3 Cir., 192 F. 901. But, as neither the plaintiff nor the defendant resided in the Eastern District

of Missouri, it is urged that under the provisions of section 112, title 28 U.S.C.A., section 51, Judicial Code, as amended the plaintiff had no right to sue because of that fact.

Section 112, title 28 U.S.C.A., section 51, Judicial Code, as amended, does not purport to limit the general jurisdiction of the District Court but it confers a personal privilege on the defendant, which he may either assert or waive. Commercial Casualty Ins. Co. v. Consolidated Stone Co., 278 U.S. 177, 49 S.Ct. 98, 99, 73 L.Ed. 252; Burnrite Coal Co. v. Riggs, 274 U.S. 208, 47 S.Ct. 578, 71 L.Ed. 1002; McPhee & McGinnity Co. v. Union Pacific R. Co., 8 Cir., 158 F. 5; Brotherhood of Locomotive Engineers Securities Corporation v. W. L. Shepherd Lumber Co., 5 Cir., 51 F.2d 153.

The right to be sued in its own federal district raised only a question of venue. If this personal privilege is not seasonably asserted, it will be deemed to have been waived. In Commercial Casualty Co. v. Consolidated Stone Co., supra, the Supreme Court, in discussing this question of venue and privilege, says:

"These provisions often have been examined and construed by this court. Summarized, the decisions are directly to the effect that the first provision invests each of the District Courts with general jurisdiction of all civil suits between citizens of different states, where the matter in controversy is of the requisite pecuniary value, and that the other provision does not detract from that general jurisdiction, but merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election.

"The decisions also make it plain that the privilege must be 'seasonably' asserted; else it is waived. Whether there was a seasonable assertion in the present case is the real question to be determined.

"*We are of opinion that the privilege is of such nature that it must be asserted at latest before the expiration of the period allotted for entering a general appearance and challenging the merits.* In ordinary course, when that period expires the defendant either will have appeared generally for the purpose of contesting the merits or by suffering a default will have assented that his adversary's allegations be taken as confessed for the purposes of

judgment. In either event the suit will have reached the stage where attention must be given to the merits. In common practice objections to venue are presented and acted upon at an earlier stage; and this, so far as we are advised, is true of the elective privilege here in question. No adjudged case is cited in which a different practice is either sustained or shown. To hold that such a privilege may be retained until after the suit has reached the stage for dealing with the merits and then be asserted would be in our opinion subversive of orderly procedure and make for harmful delay and confusion." (Italics supplied.)

In the original petition it was alleged that the action was based upon and grew out of a violation of the statutes of the United States. In its so-called first motion to dismiss on the ground of want of jurisdiction, defendant itself alleged that in his original petition plaintiff "attempts and pretends to state a cause of action under the provisions of Acts of Congress known as the Federal Employer's Liability Act and the Safety Appliance Act," so that there can be no doubt that the court had general jurisdiction of the subject of the action.

■ After the order of submission of defendant's first motion, and motion of plaintiff to strike it from the files, had been vacated and set aside by the court, defendant's motion was not further pressed and was clearly abandoned by the filing of defendant's second motion. Certainly, that motion was not "seasonably" filed. Time for answer had expired before it was filed, and at that stage of the proceedings defendant was in default.

As has been observed, when defendant finally filed its amended answer, it among other things pleaded as an affirmative defense assumption of risk and also affirmatively pleaded contributory negligence. What it pleaded in its first answer is not made to appear by the record, and whether it then entered a general appearance does not appear.

■ Error is not to be presumed, but must be made affirmatively to appear by the party asserting it. Bankers' Trust Co. v. Missouri, K. & T. R. Co., 8 Cir., 251 F. 789; Kansas City Terminal Ry. Co. v. Central Union Trust Co., 8 Cir., 28 F.2d 177; In re Schulte-United, Inc., 8 Cir., 59 F.2d 553; Becker v. Evens & Howard. Sewer Pipe Co., 8 Cir., 70 F.2d 596; Boat-

men's Bank v. Trower Bros. Co., 8 Cir., 181 F. 804; Rush v. Newman, 8 Cir., 58 F. 158; International Milling Co. v. Columbia Transp. Co., 292 U.S. 511, 54 S.Ct. 797, 78 L.Ed. 1396.

■ On appeal every intendment must be indulged in favor of the validity of the judgment appealed from. We think the privilege of questioning the venue in which defendant might be sued was not "seasonably" asserted, and that error in this regard has not been affirmatively made to appear. Being of this view, we pretermit any consideration of the question as to whether the defendant, within the meaning of the Federal Employers' Liability Act, was doing business in the Eastern District of Missouri at the time of the commencement of the action.

■ It is strenuously contended that the original petition did not plead a cause of action under the Federal Employers' Liability Act, and that, before it was amended so as to plead such cause of action, the statute of limitations had run against it. The Federal Employers' Liability Act prescribes the time within which action may be brought thereunder, and the limitation is not, it has been held, limited to the remedy but is a condition of liability created by the same statute. American R. Co. v. Coronas, 1 Cir., 230 F. 545, L.R.A. 1916E, 1095; McRae v. New York R. Co., 199 Mass. 418, 85 N.E. 425, 15 Ann.Cas. 489. Under the provisions of the act suit must be brought within two years from the day of its accrual. The original action was brought a few days before it was barred by the statute, but the amendment was not filed until after the statute of limitations had run. If, however, the amendment merely expanded or amplified what had already been alleged in the original petition, then it related back to the commencement of the action and was not affected by the intervening lapse of time. Missouri, etc., R. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355, Ann.Cas. 1914B, 134. The trend of modern decision with respect to the amendment of pleadings is toward liberality, and it is now the generally accepted rule that, "when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and * * * that a liberal rule should be applied." New York Central R. R. Co. v.

Kinney, 260 U.S. 340, 43 S.Ct. 122, 123, 67 L.Ed. 294.

In the recent case of United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 280, 77 L.Ed. 619, it is said: "The general rule is said to be that an amendment of a pleading will take effect by relation and thus relieve against the bar of an intervening limitation if the identity of the cause of action is still substantially the same, but that the limitation will prevail if under the guise of an amendment there is the substitution of a new cause of action in place of another wholly different."

In Missouri, etc., Ry. Co. v. Wulf, supra, the court held that an amendment alleging that the parties were engaged in interstate commerce did not introduce a new cause of action. Thus in Baltimore & O. S. W. R. Co. v. Carroll, 280 U.S. 491, 50 S.Ct. 182, 183, 74 L.Ed. 566, the court said: "Each of these decisions proceeds upon the ground that the amendment did not set up any different state of facts as the ground of action, and therefore it related back to the beginning of the action."

In the Kinney Case it was pointed out that the original declaration was consistent with a wrong under either state or federal law, as the facts might turn out, and that the acts constituting the tort were the same whichever law gave them that effect.

■ We are of the view that the amendment did not set up a new cause of action, and hence the lower court properly held that it was not barred by the statute of limitations.

■ At the time of the commencement of the action, the defendant's property was in the hands of receivers, and it is contended that it was therefore not at that time "doing business" in the District of Missouri. But, as we have already pointed out, we must hold under this record that, the defendant not having seasonably challenged the venue or jurisdiction of the court, the court had jurisdiction, whether within the purview of the Federal Employers' Liability Act it was doing business in the Eastern District of Missouri or not. The order appointing receivers is not in the record, and hence its scope cannot be ascertained by us. However, the mere appointment of receivers would not, of course, have the effect of dissolving the corporation, nor would it render it immune from suit. Metropolitan Savings Bank & Trust Co. v. Farmers' State Bank, 8 Cir., 20 F.2d 775.

Diversity of citizenship in fact existed. The action was based upon a federal statute, and the amount in controversy exceeded $3,000, so that the court had general jurisdiction.

■ It remains to consider whether the court should have directed a verdict because of the alleged failure of the plaintiff to prove that at the time of receiving his injuries he and the defendant were engaged in interstate commerce. The same question is raised by a challenge to certain instructions of the court on this question. To entitle plaintiff to recover, it was essential that at the time of receiving his injuries both he and the railway company were engaged in interstate transportation.

■ It appears from the evidence that the train on which plaintiff was employed as a brakeman was what was known as a turn-around freight train, operating between Moulton, Iowa, and Ottumwa, Iowa. The crew did whatever switching was necessary at the various local intermediate stations. The evening before the accident, this train, consisting of about twelve cars, moved east from Ottumwa to Moulton. Some of these cars contained interstate shipments. It was carrying an L. & N. car loaded with oyster shells consigned to L. E. Goode, at Bloomfield, Iowa, from the Universal Crushed Shell Company at Muscatine, Iowa. It was received by the defendant at Belknap, Iowa, and became a part of its train. When the train arrived at Bloomfield, there was no station agent on duty, and the train crew had no instructions as to where to place this car. In these circumstances the car was temporarily placed on the east end of what was known as the house track, with the intention of "spotting" it on the following morning. The next morning this train began its trip from Moulton to Ottumwa. It contained shipments consigned to points outside of the state of Iowa, and hence was interstate in character. When the crew reached Bloomfield, they received instructions that the car of oyster shells which had been set out temporarily the evening before was to be "spotted" at a shed or elevator near the west end of the

house track for unloading. The movement was carried out by uncoupling the locomotive from the train on the main line track and moving it onto the house track. After these movements were completed and the car had been placed on the house track adjacent to the shed or elevator, and the locomotive was moved back to the main line and again coupled to its train, it was discovered that the car had been placed at the wrong door of the shed or elevator and would have to be moved a short distance to be in proper position for unloading. There was a slight down grade to the west in the house track, and the conductor in charge instructed the crew to move the car by the use of hand pinch bars. The conductor, the brakeman (plaintiff) and the station agent undertook to move the car, and plaintiff took his place at the brake step on the end of the car for the purpose of releasing the brake to permit the car to be moved and of reapplying the brake to bring the car to a stop at the proper position. After the car had been started in motion, plaintiff, on signal from the conductor, undertook to set the brake and stop the car and, while so doing, the brake, by reason of a defective brake step, jerked him around and caused him to be thrown from the car and injured.

It must be remembered that the train carried interstate shipments, both on its trip from Ottumwa to Moulton on June 11th, and on its trip from Moulton to Ottumwa the following day. The employees were therefore engaged in interstate commerce. It was the duty of the crew to do the switching, and the car had confessedly not been placed at its final destination the evening of the 11th. Returning on the 12th, the crew left this interstate train, and it was impossible to move it until this car had been "spotted" at its proper place. Plaintiff was therefore doing a work which was so closely related to interstate transportation as directly to affect it. If he were injured and detained, it would delay the interstate movement of the train. In New York Central, etc., R. Co. v. Carr, 238 U.S. 260, 35 S.Ct. 780, 59 L.Ed. 1298, it was held that a brakeman on a train carrying several cars of interstate and two cars of intrastate freight, who was assisting in placing the intrastate cars on a side track at an intermediate station so that they might not run back on the main track and so that the train might proceed on its journey with the interstate freight, was engaged in interstate commerce. It is quite generally held that, where an employee is injured in preparation for an interstate trip, he is within the protection of the statute. New York Central, etc., R. Co. v. Carr, supra; Lamphere v. Oregon, etc., Co., 9 Cir., 196 F. 336, 47 L.R.A.,N.S., 1; Pecos, etc., R. Co. v. Rosenbloom, 240 U.S. 439, 36 S.Ct. 390, 60 L.Ed. 730; Philadelphia, etc., R. Co. v. Hancock, 253 U.S. 284, 40 S.Ct. 512, 64 L.Ed. 907; Pennsylvania Co. v. Donat, 239 U.S. 50, 36 S.Ct. 4, 60 L.Ed. 139; Kansas City Southern Ry. Co. v. Quin, 5 Cir., 85 F.2d 485.

There was, therefore, no error in denying defendant's motion for a directed verdict, nor was there any error in the instructions to the jury on this question. ▮ In his opening statement, plaintiff's counsel described plaintiff's condition and treatment, stating that at certain times "his wife rubbed that leg with alcohol," and defendant claims that reference to plaintiff's matrimonial status was prejudicial error. But it appeared from the testimony, on cross-examination by defendant, that plaintiff's wife drove him to Galesburg, Ill., for an examination. His matrimonial status was therefore placed before the jury by testimony brought out by the defendant and to which no objection was interposed nor any motion made to strike. It can scarcely be said that proof of this sort was calculated to arouse the prejudice or passion of the jury.

We have considered all the matters urged on behalf of the defendant, but those not specifically referred to in this opinion are not deemed of sufficient substance to warrant discussion.

No error being affirmatively shown by the record, the judgment appealed from is affirmed.