## FORT WAYNE CORRUGATED PAPER CO. v. ANCHOR HOCKING GLASS CORPORATION et al.

### No. 385.

District Court, W. D. Pennsylvania.
Jan. 24, 1940.

---

[1] Rehearing pending at date of publication.

404

Patterson, Crawford, Arensburg & Dunn, Chas. F. C. Arensburg, and James M. Barrett, Jr., all of Pittsburgh, Pa., for plaintiff.

Reed, Smith, Shaw & McClay, Elder W. Marshall and John C. Bayne, all of Pittsburgh, Pa., for defendant.

McVICAR, District Judge

This is a civil action by the Fort Wayne Corrugated Paper Company, a corporation incorporated under the laws of Indiana, against the Anchor Hocking Glass Corporation and the Anchor Hocking Glass Corporation of Pennsylvania, two corporations incorporated under the laws of Delaware. The Anchor Hocking Glass Corporation has filed two motions which are now before us: The first one dated July 11, 1939 wherein it moves the Court to quash the return of Service of the summons served on it. The second motion is dated November 17, 1939.

In it, it moves to dismiss the suit alleging that this Court was without venue to hear and determine the same, and in the same motion it moves to quash the return of service of pluries summons made on it September 23, 1939. The Anchor Hocking Glass Corporation of Pennsylvania, a wholly owned and controlled subsidiary of the Anchor Hocking Glass Corporation, has filed an answer. It, therefore, probably means that if the motions of the Anchor Hocking Glass Corporation prevail that the same cause of action will have to be tried in two different Courts and be subject to separate appeals, etc.

The motion of the Anchor Hocking Glass Corporation dated July 11, 1939 to quash the return of the service of the summons upon it June 21, 1939 is on the ground that the person served is not an officer or agent of the Anchor Hocking Glass Corporation but is an officer or agent of its wholly owned and controlled subsidiary, the Anchor Hocking Glass Corporation of Pennsylvania. These facts having been established, the motion should be sustained. Cannon Manufacturing Company v. Cudahy Packing Company, 1925, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Philadelphia & R. R. Co. v. McKibbin, 1917, 243 U.S. 264, 37 S.Ct. 380, 61 L. Ed. 710; Peterson v. Chicago, R. I. & P. R. Co., 1907, 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841; Consolidated Textile Corp. v. Gregory, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047; Mechanical Appliance Co. v. Castleman, 215 U.S. 437, 30 S.Ct. 125, 54 L.Ed. 272; La Varre v. International Paper Company, 1929, D.C., 37 F.2d 141. In Cannon Manufacturing Company v. Cudahy Packing Company, supra, it is stated [267 U.S. 333, 45 S.Ct. 251, 69 L.Ed. 634]: " * * * Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely, and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other states. The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the

same way as if the two were wholly independent corporations. * * *" In the present case, the books of the parent corporation and those of the subsidiary corporation are kept separate.

In the motion of the Anchor Hocking Glass Corporation of November 17, 1939, it moves to quash the return of service made upon it September 23, 1939. The marshal in his return on service states: "I hereby certify and return, that on the twenty-third day of September, 1939, I received the within summons and on the twenty-third day of September, 1939, at 9:50 A. M. Daylight Savings Time, I served the within summons and complaint on the Anchor Hocking Glass Corporation, a foreign corporation, by serving William C. Porter, personally, who is a representative, agent and manager in charge of the Sales Department of Anchor Hocking Glass Corporation at the Anchor Hocking Glass Corporation office, 811 Investment Building, Fourth Avenue, Pittsburgh, Pennsylvania at which time I made known the contents of the within summons to William C. Porter, agent, by reading to him and leaving with him a copy of the within summons and complaint."

The reason contended for in support of this motion is that it is not doing business in the State of Pennsylvania and that the service on William C. Porter as its agent was not service upon it. The Anchor Hocking Glass Corporation is not registered in the State of Pennsylvania nor has it appointed an agent upon whom service can be made for it. It sells glass products, including tableware and glass containers manufactured at its plant located at Lancaster, Ohio. It wholly owns and controls the Anchor Hocking Glass Corporation of Pennsylvania, which formerly had a plant located at Connellsville, Pennsylvania, which was abandoned in 1938. It sells a considerable amount of its manufactured product in Pennsylvania. It has three agents in Pennsylvania for the purpose of making sales; two of these agents including the one served solicit orders. After orders have been received they are sent to the Anchor Hocking Glass Corporation at Lancaster, Ohio, for acceptance or rejection. These agents, two of whom are located in Pittsburgh and one in Philadelphia, do not receive any salary. They are furnished with catalogs, order blanks and samples by the Anchor Hocking Glass Corporation. Their payment is on a commission basis. They do not collect any money from purchasers. These agents lease and pay for the rental of the offices which they occupy and for telephone service.

On the office door in the Investment Building, appears the name: "Anchor Hocking Glass Corp. Hocking Division, William C. Porter, Repr." The office is listed in the Pittsburgh Telephone Directory as "Anchor Hocking Glass Corp. (Tableware Div.) Investment Bl." and in the Pittsburgh City Directory as "Anchor Hocking Glass Corp. (Tableware Div.) William C. Porter, Rep., Table glassware, 810 Investment Bldg." Similar listings and markings were made in relation to the office located in the Fulton Building.

In Rules of Civil Procedure, Rule 4(d), 28 U.S.C.A. following section 723c, it is stated: "The summons and complaint shall be served together. * * * Service shall be made as follows: * * *

"(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process."

In Real Silk Hosiery Mills, Inc., v. Philadelphia Knitting Mills Company, 3 Cir., 46 F.2d 25, 26, the Court adopted the opinion of Judge Dickinson of the District Court. In the opinion of Judge Dickinson, it is stated:

"The defendant is a corporation existing under the laws of Illinois, with main offices in Indianapolis, Ind. The defendant is a manufacturer, but markets its product by sales to those commonly called the ultimate consumer. Many of these customers are situate in the city of Philadelphia. To reach them, an office is maintained in an office building announced by the usual door sign to be the office of the 'Real Silk Hosiery Mills, Inc., of Indianapolis.' This sign gives the corporate name of the defendant. The office is supplied with stationery carrying the letterhead of the defendant corporation, with the added designation of 'Philadelphia Office.' The directory of the telephone company carries as subscriber the defendant corporation with its room number in the office building mentioned. The person upon whom the writ

was served carries the title of a general manager of the defendant corporation in charge of the Philadelphia office. * * * The real position of the defendant in opposing the effort of the plaintiff is disclosed in a statement of how its business is conducted. It claims that it sells its manufactured product direct to the user by a sale made from its office and warehouse in Indianapolis. It employs a large number of so-called solicitors who go from door to door in Philadelphia and elsewhere soliciting orders for hosiery. All such orders are taken by the solicitors subject to confirmation of the solicited purchase by the home office in Indianapolis and its approval. The solicitors make no deliveries, although they do carry with them samples of what they have for sale, and the purchaser buys by these samples. The product which the solicitors use as samples is a part of their soliciting outfit and under their arrangement with the defendant paid for by the solicitors. These solicitors are under the general direction of what the defendant calls a branch sales manager. This manager conducts an independent business of his own, in that his compensation is on a commission basis, and he locates his office so as to suit his convenience and that of the solicitors under him. The solicitors when they secure an order collect from the proposed buyer a sum which is equal to the commission which is ultimately to be paid by the defendant. The order when obtained is reported to the branch sales manager and by him transmitted to the main office of the defendant in Indianapolis. If approved, the purchased goods are shipped C.O.D. to the buyer; credit on account being given him for what he has paid to the solicitor. The expense of furnishing the office, telephone, advertising, bills, and all others incurred by the office are paid by the branch sales manager."

The ruling of the District Court was sustained, refusing to set aside the service on the ground that the defendant was not doing business in Pennsylvania. The present case seems to be substantially in fact the same as the case just cited, the only difference worthy of mention being that in the case cited, the solicitors for orders collected from purchasers a sum equal to their commission.

See, also, International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, and the recent case of Neirbo Company et al. v. Bethlehem Shipbuilding Corporation, Ltd., 60 S.Ct. 153, 84 L.Ed. ——, opinion of Mr. Justice Frankfurter of November 22, 1939. Under the law as laid down in the above Rule of Court and the cases cited, the service made upon William C. Porter as a managing agent of the Anchor Hocking Glass Corporation was a valid service upon said corporation.

■ I am of the opinion that the motion to quash or set aside the service was made too late. The pluries summons was served September 23, 1939. The motion to quash said service was made November 17, 1939. The Rules of Civil Procedure require such a motion to be made within twenty days after the service of the summons and complaint. See Reference to Rules and cases infra under the discussion of Venue.

■ The Anchor Hocking Glass Corporation in its motion of November 17, 1939, also moved the Court to dismiss said corporation as a party defendant because it is a corporation incorporated under the laws of Delaware and hence under the Federal Venue Statute may not be sued in this Court by the plaintiff corporation incorporated under the laws of Indiana. This motion was made about five months after action was brought and the complaint and summons were served upon the Anchor Hocking Glass Corporation. It was also made after the motion to quash of July 11, 1939 and after depositions had been taken at Lancaster, Ohio, at a considerable expense to the parties, and after other stipulations had been made by the parties. The Federal Statute of Venue, Sec. 51 of the Judicial Code, 28 U.S.C.A. § 112, provides that " * * * where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

In Neirbo Company et al. v. Bethlehem Shipbuilding Corporation, Ltd., supra, it is stated by the Supreme Court [60 S.Ct. 154]:

"The jurisdiction of the federal courts—their power to adjudicate—is a grant of authority to them by Congress and thus beyond the scope of litigants to confer. But the locality of a law suit—the place where judicial authority may be exercised.—though defined by legislation relates to the convenience of litigants and as such is.

subject to their disposition. This basic difference between the court's power and the litigant's convenience is historic in the federal courts. After a period of confusing deviation it was firmly reestablished in General Inv. Co. v. Lake Shore & M. S. R. Co., 260 U.S. 261, 43 S.Ct. 106, 67 L. Ed. 244; and Lee v. Chesapeake & Ohio R. Co., 260 U.S. 653, 43 S.Ct. 230, 67 L.Ed. 443, over-ruling Ex parte Wisner, 203 U. S. 449, 27 S.Ct. 150, 51 L.Ed. 264, and qualifying In re Moore, 209 U.S. 490, 28 S.Ct. 585, 706, 52 L.Ed. 904, 14 Ann.Cas. 1164. All the parties may be non-residents of the district where suit is brought. Lee v. Chesapeake & Ohio R. Co., supra. Section 51 'merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election.' Commercial Casualty Ins. Co. v. Consolidated Stone Co., 278 U.S. 177, 179, 49 S.Ct. 98, 99, 73 L.Ed. 252.

"Being a privilege, it may be lost. It may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct. Commercial Casualty Ins. Co. v. Consolidated Stone Co., supra. Whether such surrender of a personal immunity be conceived negatively as a waiver or positively as a consent to be sued, is merely an expression of literary preference. The essence of the matter is that courts affix to conduct consequences as to place of suit consistent with the policy behind § 51 [28 U.S.C.A. § 112], which is 'to save defendants from inconveniences to which they might be subjected if they could be compelled to answer in any district, or wherever found.' "

In Commercial Casualty Ins. Co. v. Consolidated Stone Co., 278 U.S. 177, 179, 180, 49 S.Ct. 98, 99, 73 L.Ed. 252, the Court in discussing jurisdiction and venue stated:

"The pertinent statutes are sections 41 and 112, title 28, United States Code (28 U.S.C.A. §§ 41, 112). One provides that district courts shall have 'original jurisdiction' of certain classes of civil suits, including suits 'between citizens of different states,' where the value of the matter in controversy, exclusive of interest and costs, exceeds $3,000. The other provides that 'where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant.'

"These provisions often have been examined and construed by this court. Summarized, the decisions are directly to the effect that the first provision invests each of the District Courts with general jurisdiction of all civil suits between citizens of different states, where the matter in controversy is of the requisite pecuniary value, and that the other provision does not detract from that general jurisdiction, but merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election.

"The decisions also make it plain that the privilege must be 'seasonably' asserted; else it is waived. Whether there was a seasonable assertion in the present case is the real question to be determined.

"We are of the opinion that the privilege is of such a nature that it must be asserted at latest before the expiration of the period allotted for entering a general appearance and challenging the merits."

See, also, Wabash R. Co. v. Bridal, 8 Cir., 94 F.2d 117. In Findlay et al. v. Florida East Coast R. Co., 5 Cir., 68 F.2d 540, on page 541, Judge Hutcheson says: "It is undoubtedly true that the venue privilege accorded by section 51, Jud.Code (28 U.S.C.A. § 112), to a defendant sued in a federal court other than that of his or the plaintiff's residence, must be timely, effectively, and continuously asserted by him, and acts or conduct inconsistent with its assertion will constitute a waiver of it. Burnrite Coal Briquette Co. v. Riggs, 274 U.S. 208, 47 S.Ct. 578, 71 L.Ed. 1002; Brotherhood of Locomotive Engineers v. W. L. Shepherd Lumber Co. [5 Cir.], 51 F. 2d 153."

In Rules of Civil Procedure 12(a), 28 U.S.C.A. following section 723c, it is stated: "A defendant shall serve his answer within 20 days after the service of the summons and complaint upon him".

In Rule 12(b) it is provided that "the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted." 12(b) further provides that "A motion making any of these defenses shall be made before pleading if a further pleading is permitted." Rule 12

(g) provides: "A party who makes a motion under this rule may join with it the other motions herein provided for and then available to him. If a party makes a motion under this rule and does not include therein all defenses and objections then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on any of the defenses or objections so omitted, except that prior to making any other motions under this rule he may make a motion in which are joined all the defenses numbered (1) to (5) in subdivision (b) of this rule which he cares to assert."

In Moore's Federal Practice the author states at page 661: "Thus defenses '(1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process' may be urged by one motion, but not by a series of motions, * * *"

The author further states at page 628: "He should, however, present the first five of the foregoing defenses [(1)–(5)] that he has in one motion. For example, he cannot move to dismiss the complaint because jurisdiction over his person has not been obtained and, losing on that motion, move to dismiss for improper venue. Such successive motions are precluded by subdivision (g)"

The Anchor Hocking Glass Corporation having failed for approximately five months to raise the question of venue and the plaintiff having had considerable expense in the taking of depositions, etc., requires us to hold that the Anchor Hocking Glass Corporation lost the personal privilege of venue in the District in which it resides. This loss was caused by failure to assert it seasonably and by submission through conduct. I do not see how the Anchor Hocking Glass Corporation will be inconvenienced by the trial of this case against it, as it will no doubt have to try the case in this Court against the Anchor Hocking Glass Corporation of Pennsylvania, its wholly owned and controlled subsidiary. On the other hand, if this action is not tried here against both defendants, it probably means that it will have to be tried in another jurisdiction which would mean expense and inconvenience to the plaintiff as well as to the Anchor Hocking Glass Corporation.

Let orders be prepared and submitted in accordance with the foregoing opinion.