Curtis Lee **ALLEN, Jr.,** Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 20964.

United States Court of Appeals
District of Columbia Circuit.

Decided Aug. 23, 1967.

Petition for Rehearing En Banc
Denied Oct. 20, 1967.

Mr. Joshua H. Lane, Washington, D. C. (appointed by this court), was on the brief for appellant.

Mr. Frank Q. Nebeker, Asst. U. S. Atty., with whom Mr. David G. Bress, U. S. Atty., was on the brief for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and DANAHER, Circuit Judge.

DANAHER, Circuit Judge:

This appellant was indicted on May 23, 1967 on charges of robbery, assault with a dangerous weapon, and carrying a dangerous weapon. At gunpoint, the record shows, Allen had held up a laundry. Two eyewitnesses identified him as the culprit. Commissioner Wertleb in compliance with the provisions of 18 U.S.C. § 3146(b) made the determination that *the* condition of release which "will reasonably assure" the presence of the accused at trial was a bond "set at $5,000 with 8% cash deposit." Judge Hart thereafter in the District Court denied Allen's motion for release on personal recognizance or on other non-financial conditions. Allen then appealed to this court. 18 U.S.C. § 3147(b) provides as applicable here, "Any order so appealed shall be affirmed if it is supported by the proceedings below." A majority has concluded that Judge Hart's order is not lacking in such support and, accordingly, that order is affirmed.

█ The "Bail Reform Act of 1966," 80 STAT. 214, FED.R.CRIM.P. 46(c) and the "District of Columbia Bail Agency Act," 80 STAT. 327, must be read together. A bail determination is a judicial act, an order by a judicial officer, respecting the terms of release, including "any order setting the amount of bail bond or any other kind of security given to assure appearance in court." Each case presents its own circumstances to be considered by the judicial officer, and no accused is automatically entitled to release. Rather, under the applicable Rule and the statutes, the judicial officer now is not limited to the former bail bond procedure, but is free to impose the first of a series, or a combination of conditions which in his judgment will secure the appearance of the accused for trial.

█ The judicial officer in arriving at his determination of conditions of release shall, *inter alia,*

"take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family lies, employment, financial resources, character and mental condition, the length

of his residence in the community, [and] his record of convictions * * *."

It is obvious from the record and from the reasons specified by the Commissioner that he had complied with the requirements of 18 U.S.C. § 3146(b) in making his determination. He had weighed and rejected statements by Allen's parents as "not consistent with the evident lack of parental control" over the months preceding arrest. Although only twenty years old and unemployed at the time of his arrest, Allen had been living some months with his "girl friend." The Commissioner also had properly taken into account Allen's previous serious criminal record, including a housebreaking conviction, and an obvious lack of stability on the part of the accused. The *first* of the conditions to be imposed, he decided, which would "reasonably assure the appearance" of Allen for trial was that spelled out in 18 U.S.C. § 3146 (a) (3). That was a decision the Commissioner was authorized to make, and it did not turn upon a position taken by the prosecutor.

It is not at all a question of whether we in the first instance would have required a deposit of 8% or 4% of the amount of the bond set, subject to return of the deposit if Allen appeared for trial. We might even have moved to condition (4) in section 3146(a) which permits the judicial officer to require the execution of a bail bond with solvent sureties or the deposit of substantial cash. This accused had not been detained "needlessly" but for an end which serves the public interest—that there be reasonable assurance of Allen's appearance for trial. The law specifies that a responsible judicial officer must make the determination, and absent cognizable error, it is not open to this court to interfere.

We find nothing unlawfully arbitrary or capricious about the bail de-

termination by the Commissioner. There was established no ground whatever for Judge Hart to grant the appellant's motion for release on *personal* recognizance or *other* non-financial conditions. His order finds support in "the proceedings below," 18 U.S.C. § 3147(b), and we are bound to affirm.

BAZELON, Chief Judge (dissenting):

Our indigent appellant, charged with noncapital offenses,[1] was ordered released prior to trial in Criminal No. 623–67 upon the execution of a $5,000 appearance bond and the deposit of 8% thereof ($400) in the Registry of the District Court. His family could raise only $200. He moved for release on personal recognizance or, alternatively, on certain nonfinancial conditions. Although the Government consented to release upon execution of a $1,000 unsecured appearance bond and certain nonfinancial conditions, the District Court nevertheless denied the motion *in toto.* This appeal followed.

I believe there are three reasons why the order of the District Court[2] may not be affirmed: (1) The District Court's determination that the appellant had insufficient community ties rested on a statement of the District of Columbia Bail Agency that it had been unable to verify appellant's residence. (2) The District Court offered no reason, and the record reflects none, why a deposit of $400, which appellant cannot furnish, would reasonably assure his appearance for trial, while a deposit of $200, which he can furnish, would not. (3) The District Court considered the nature of the offense charged to assess appellant's danger to the community, and not to assess the risk of flight.

### I.

From the Bail Agency's report that it had been unable to verify the appellant's address, the court concluded that

---

1. Robbery, assault with a dangerous weapon, and carrying a dangerous weapon.

2. Of course, it is the order of the District Court that is here under review, not that

of the Commissioner. 18 U.S.C. § 3147 (b).

appellant had insufficient community ties and would not "likely appear." Appellant's undisputed testimony, however, showed that he had been living with his parents and that they had changed their address just prior to his arrest. In addition, counsel for appellant represented that appellant had "for the most part" been living with his parents, staying at his girl friend's house "now and then," and that the Bail Agency's inability to verify appellant's address resulted from the fact that his parents had just moved and had no telephone at the time of his arrest.[3] The determination that appellant is without "any great community ties" is not "supported by the proceedings below." 18 U.S.C. § 3147(b). Boxley v. United States, (order of June 9, 1967), 128 U.S.App.D.C. ——, 385 F.2d 975.

## II.

It plainly appears from the language and history of the Bail Reform Act that its central purpose was to prevent pretrial detention because of indigency. Section 2[4] of Senate Bill 1357, U. S. Congressional and Administrative News, p. 2293, which became the Bail Reform Act of 1966, provided that:

(a) The Congress finds that—

\* \* \* \* \* \*

(2) Persons reasonably expected to appear at future proceedings should not be deprived of their liberty solely because of their financial inability to post bail;

(3) Respect for law and order is diminished when the attainment of pretrial liberty depends solely upon the financial status of an accused;

(4) Bail practices which rely primarily on financial consideration inevitably disadvantage persons and families of limited means;

\* \* \* \* \* \*

(6) Family and community ties, a job, residence in the community, and the absence of a substantial criminal record, are factors more likely to assure the appearance of a person than the posting of bail;

\* \* \* \* \* \*

(b) The purpose of this Act is to revise the practices relating to bail to assure that all persons, regardless of their financial status, shall not needlessly be detained pending their appearance to answer charges, to testify, or pending appeal, when detention serves neither the ends of justice nor the public interest.

The committee reports in both the House and Senate identified as the chief evil of the old bail system the automatic reliance on monetary bail with the result that indigent defendants remained in custody while their wealthier counterparts were set free. It was pointed out that the difference in treatment is not justified by any reason relevant to the legitimate purpose of pretrial bail, i. e., deterring flight.[5]

---

3. Counsel stated that he was able to confirm the information with respect to appellant's residence by arranging, through appellant's girl friend, an interview with appellant's parents. According to counsel, "the reason the Bail Agency was unable to verify their information was due to the time pressure under which the Bail Agency operates \* \* \* [which] would preclude the kind of arrangements made by defendant's counsel". The Bail Agency's failure to exert greater effort may be the result of inadequate funding and staffing.

4. The "findings of legislative intent" in § 2 (a) of S. 1357 were deleted from the Bill prior to final passage, "having served their purpose as a means of emphasizing

the foundations upon which the Subcommittee on Constitutional Rights had initiated the reform." Ervin, *The Legislative Role in Bail Reform*, 35 GEO. WASH.L.REV. 429, 452 (1967). (Senator Ervin was the Bill's chief sponsor in the Senate, as Chairman of the Subcommittee on Constitutional Rights of the Committee on the Judiciary.) See also H.R.REP. No. 1541, 89th Cong., 2d Sess. 3 (1966). Section 2(b) was retained in the final Bill.

5. In reporting S. 1357 to the Senate, the Committee on the Judiciary stated:
    The principle that a person is presumed innocent until proven guilty by a court of law is perhaps the most basic concept of American criminal justice.

In order to implement the purpose of the Act, § 3146 establishes a presumption in favor of release on personal recognizance or upon execution of an unsecured appearance bond; the judge may impose other conditions only if he finds that release upon the preferred conditions will not reasonably assure the accused's appearance for trial.[6] And even after making such a finding, the judge must give priority to non-financial conditions.[7]

> A corollary of this presumption of innocence is that a person accused of crime should not be confined because of his impecuniosity prior to his trial and conviction so long as he can provide adequate assurance that he will be available to stand trial when called.
> * * *
> Every witness before the subcommittees agreed that, at least in noncapital cases, the principal purpose of bail is to assure that the accused will appear in court for his trial. There is no doubt, however, that each year thousands of citizens accused of crimes are confined before their innocence or guilt has been determined by a court of law, not because there is any substantial doubt that they will appear for trial if released, but merely because they cannot afford money bail. There is little disagreement that this system is indefensible. S.REP. No. 750, 89th Cong., 1st Sess. 6 (1965).

Similar sentiments were expressed by the Committee on the Judiciary of the House of Representatives:

> The practice in admitting persons to bail which places primary reliance on financial inducements as the means to assure the presence of the accused at the time of trial seems to ignore the fact that those defendants of limited means who are unable to secure the necessary bail are faced with an impossible situation.
> * * * * * * *
> The present system of monetary bail would be adequate if all could afford it. The facts, however, are to the contrary. The rich man and the professional criminal readily raise bail regardless of the amount. But it is the poor man, lacking sufficient funds, who remains incarcerated prior to trial. H.R.REP. No. 1541, 89th Cong., 2d Sess. 8, 9 (1966).

See also, remarks of Senator Tydings, Chairman of the Subcommittee on Improvements in Judicial Machinery of the Committee on the Judiciary, during the Senate debate on S. 1357:

> [T]he plain truth is that under our present bail system we do not have equal justice under law. Equality under our bail system is a cherished myth, not a living reality—the poor have been getting a poorer brand of justice than the rich. The bill before us, S. 1357, revises pretrial release procedures and bail practices in the Federal courts in order to eliminate the unjust discrimination against the poor that our present system fosters.
> The legitimate purpose of bail is to guarantee the presence of the accused at his trial. The existing bail system attempts to effectuate this guarantee primarily by conditioning pretrial release on the deposit of a secured bond. But experience has shown, Mr. President, that an accused's financial ability or inability to post a money bond is largely unrelated to the likelihood that he will appear either at trial or at some other future judicial proceeding. Yet every year, thousands of such persons languish in our jails for weeks and even months, because they cannot afford to pay for their freedom. The number of people who cannot afford even low bail is surprisingly large. The tragic truth is that many of our citizens, simply because they are too poor to afford bail, needlessly suffer the humiliation of extended imprisonment even though they are later acquitted of the crime with which they have been charged, and despite the fact that other measures short of imprisonment might well have been sufficient to give reasonable assurance that they will be present at trial. 111 CONG.REC. 24522 (1965)

6. Any person charged with an offense, other than an offense punishable by death, *shall*, at his appearance before a judicial officer, *be ordered released* pending trial *on his personal recognizance or upon the execution of an unsecured appearance bond* in an amount specified by the judicial officer, unless the officer determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person as required. 18 U.S.C. § 3146(a). [Emphasis added.]

7. When * * * a determination [that release on personal recognizance or upon execution of an unsecured appearance bond will not reasonably assure the accused's appearance] is made, the judicial officer shall, either in lieu of or in addition to the above methods of release, impose *the first of the following con-*

The Government has agreed to appellant's release on unsecured appearance bond and certain other conditions; the District Court ordered appellant's release, as it must under § 3146(a). Thus, the only question is what conditions are reasonably necessary to assure appellant's appearance for trial, after he has been released. Nothing in the record supports the determination that a $400 deposit will insure appellant's appearance while a $200 deposit will not. Without such support, it appears that he is being deprived of pretrial release solely because he cannot raise the additional $200. This deprivation plainly violates both the letter and basic purpose of the Bail Reform Act.

It is true, as the majority states, that under the Act "no accused is automatically entitled to release" in a case where the accused is unable to satisfy the only

> *ditions of release* which will reasonably assure the appearance of the person for trial, or, if no single condition gives that assurance, any combination of the following conditions * * *. 18 U.S.C. § 3146(a). [Emphasis added.]
>
> That the Act was intended to establish a presumption in favor of release on personal recognizance, and to require judicial officers to give priority to non-financial conditions of release, is amply supported by the legislative history of the Act:
>
> * * * [S]ection 3146(a) specifies that persons accused of noncapital offenses shall be released upon personal recognizance or unsecured bond unless the judicial officer determines, upon good cause shown, that such a release will not reasonably assure the appearance of the accused as required. Thus, release on one of these conditions is required unless it appears—from the nature of the offense charged or the accused's record of previous failures to appear at court proceedings or flight to avoid prosecution, for example, that such a release is inadvisable under the circumstances. *Only in such cases* may the judicial officer impose one or more of the additional conditions of release enumerated in the bill, *giving priority to nonfinancial conditions* before considering the requirement of financial security.
>
> * * * * * *
>
> In summary, section 3146(a) is intended to require that every person accused of a noncapital offense * * *

condition which will reasonably assure his appearance. But in light of the scheme and history of the Bail Reform Act, I would require a strong showing that bail in an amount the accused can afford will not reasonably assure his appearance, before I would permit him to be detained for lack of bail funds. In the absence of a rational basis, clearly demonstrated, for setting bail in an amount greater than the accused can provide,[8] I do not believe that the order under review may be affirmed as "supported by the proceedings below."

### III.

The Bail Reform Act does not permit pretrial detention in noncapital cases. 18 U.S.C. § 3146(a). In establishing conditions of release, the judicial officer is limited to determining what measures are necessary to insure the accused's ap-

> is *presumed* entitled to be released pending trial on his own recognizance or upon the execution of an unsecured appearance bond. Only if factors appear which reasonably suggest that such a procedure will not adequately assure the appearance of the accused may the judicial officer impose one or more of the additional conditions of release enumerated in the bill. * * * In determining which additional release condition or combination of conditions should be imposed, the judicial officer is required to consider them in the order in which they are set forth in the bill. For example, he * * * can require the execution of an appearance bond and the deposit in the court of 10 percent of the amount of such bond * * * or require the execution of an ordinary bail bond * * * *only if he determines that no combination of the enumerated nonfinancial conditions of release will reasonably assure appearance as required.* [Emphasis added.] S.REP. No. 750, 89th Cong., 1st Sess. pp. 10–11. See also H.R.REP. No. 1541, 89th Cong., 2d Sess. p. 10.

8. We are not confronted in this case with the problem of determining whether the accused is telling the truth when he asserts that he is unable to furnish bail in a certain amount. Appellant's confinement for several months is ample demonstration of his sincerity.

pearance at trial and may not take into account the accused's potential dangerousness to the community.[9] Regardless of the wisdom of its decision, and whether Congress' constitutional doubts were warranted, Congress clearly did not authorize "preventive detention." [10]

In the present case, it would seem that the District Court refused to modify conditions of release largely on the belief that appellant would pose a danger to the community if released:

> THE COURT: * * * This was a robbery at gunpoint. He had a gun on him when he was arrested.

> MR. LANE [counsel for appellant]: Yes, Your Honor.

THE COURT: And he has no record of any address—he cannot verify any address or any great community ties. I do not think he would likely appear and further I feel he would *likely present a danger to the public,* and I will deny it.

> *     *     *     *     *     *

MR. LANE: Your Honor, I have confirmed that—his parents were at the preliminary hearing and I did confirm that two days prior to the time of the arrest they did move from the Oakdale address to the address that the defendant has just given you.

THE COURT: Did you also confirm at the time of his arrest he had in his possession a loaded gun?

---

9. 18 U.S.C. § 3146(b). *Compare* 18 U.S.C. § 3146(a), "Any person charged with an offense, other than an offense punishable by death, shall * * * be ordered released pending trial * * * unless the officer determines * * * that such a release will not reasonably assure the appearance of the person as required. When such a determination is made, the judicial officer shall * * * impose the first of the following conditions of release *which will reasonable assure the appearance of the person for trial * * *.*", *with* 18 U.S.C. § 3148, "A person (1) who is charged with an offense punishable by death, or (2) who has been convicted of an offense * * * shall be treated in accordance with the provisions of Section 3146 unless the court or judge has reason to believe that no one or more conditions of release *will reasonably assure that the person will not flee or pose a danger to any other person or to the community.*"

10. The Senate report states:
   The bill is not intended to deal with the problem of preventive detention of an accused because of the possibility that his liberty might endanger the public welfare, either because of the accused's predisposition to commit further acts of violence during the pretrial period, or because of the likelihood that his freedom might result in the intimidation of witnesses or the destruction of evidence. S.REP. No. 750, 89th Cong., 1st Sess. 5 (1965).
   The House report contains language to the same effect, and adds:
   It must be remembered that under American criminal jurisprudence pre-

trial bail may not be used as a device to protect society from the possible commission of additional crimes by the accused. H.R.REP. No. 1541, 89th Cong., 2d Sess. 6 (1966).
In introducing S. 1357 to the Senate, Senator Ervin stated:
   [I]f we are to preserve the principle that an accused person is presumed innocent of the crime with which he is charged, there are obvious grave difficulties with sanctioning a procedure which allows courts to detain him prior to trial for fear that he might commit a crime if released.
   Under all the circumstances, the subcommittee decided that legislative authorization of preventive detention seemed premature at the time the bail reform bill was drafted, and that inclusion of a preventive detention provision in the bill might confuse the issues and endanger passage of the bill. * * * Rather than risk the great uncertainties, legal and practical, which might result from legislative authorization of preventive detention at this time, the subcommittee preferred to undertake a more reliable assessment of the need for, the desirability of and the legal permissibility of preventive detention. 111 CONG.REC. 24523 (1965). See also Ervin, *The Legislative Role in Bail Reform*, 35 GEO.WASH.L.REV. 429, 443–446 (1967).
The conclusion is inescapable that the Bail Reform Act provides no authority to order the detention of a person accused of a noncapital offense on the ground that he will present a danger to the community if released.

MR. LANE: That is the testimony at the hearing, Your Honor.

THE COURT: All right. I will not change my mind on it.

As the majority points out, § 3146(b) does authorize consideration of the "nature of the offense"—but *only* "[i]n determining which conditions of release will reasonably *assure appearance*". The nature of the offense may be relevant in assessing the likelihood of flight where, for example, the gravity of the offense raises the prospect of a very long sentence. But the Act does not permit an inference of dangerousness to be drawn from the nature of the offense charged.

For the above reasons, I would set aside the order of the District Court and remand with the following instructions: that the court re-evaluate the evidence on appellant's community ties, requesting a verified report from the Bail Agency if it deems inadequate the information supplied by the parties; that the amount required to be deposited be reduced to $200 unless there is some rational explanation in the record why a $400 deposit will assure appellant's appearance but $200 will not; and that the court take into account the nature of the offense only as it bears upon the likelihood of flight.