UNITED STATES of America
v.
James E. LEATHERS, Appellant.

UNITED STATES of America
v.
David Matthew WILLIAMS, III, Appellant.

Nos. 22816, 22818.

United States Court of Appeals
District of Columbia Circuit.

April 17, 1969.

Mr. Francis J. O'Rourke, Washington, D. C., was on the motion for appellant in No. 22,816.

Mr. Peter C. Jenkins, Washington, D. C., was on the Memorandum of Law and Fact for appellant in No. 22,818.

Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on appellee's opposition to the motion in No. 22,816 and appellee's response to the Memorandum of Law and Fact in No. 22,818.

Before BAZELON, Chief Judge, and McGOWAN and ROBINSON, Circuit Judges, in Chambers.

## PER CURIAM:

In recent months this court has experienced a dramatic increase in appeals by persons detained pending trial from the imposition of bail bonds which they are financially unable to meet.[1] This phenomenon may or may not reflect a conscious recoil from the letter and spirit of the Bail Reform Act of 1966[2] on the part of those judges entrusted with its day-to-day adminstration. We can appreciate the disquiet a trial judge may feel on occasion in releasing a person charged with a dangerous crime because the Bail Act requires it, a feeling we have at time shared. We can also understand the pressures placed on a judge who sincerely believes that pretrial release in a particular case is incompatible with the public safety, and who also knows that substantial modification of the Bail Act is currently under consideration by the Congress.

The life of the Bail Act has been marked by woefully inadequate awareness of its requirements by the lay public, resulting in often savage and invariably unfair criticism of judges for simply abiding by their sworn oaths to administer the laws of the United States. But when the statute and its legislative history are unambiguous, as is the case with the Bail Reform Act,[3] none of us on the bench has any serious alternative but to put aside his personal doubts and to apply the Act as Congress has written it.

The Bail Reform Act was an effort by Congress to give meaning to some of our highest ideals of justice. It was, by common consent, a legislative intervention in a field where reform was badly needed, not only in the interest of individuals charged with crime but of the taxpayers as well. Those who differ about the merits of some of the Act's provisions are in agreement that a fair trial of the Act has been greatly jeopardized by its having been launched at a time of spiraling crime and lagging commitment by the Congress of the resources necessary to cope with it. The Bail Act may seem to work one way when defendants are tried within a month after indictment instead of a year, or when the facilities exist for reasonable supervision of the conditions of pretrial release. It may appear to have quite another aspect when these circumstances do not obtain.

The trial judges in this jurisdiction, who are striving hard to reduce the backlog of criminal trials, are thereby doing their best, under difficult circumstances indeed, to give the promise of the Bail Reform Act some chance of realization. We recognize that effort at the same time as we note the anomaly of any concurrent failure to adhere to the directions of the Act itself.

## I.

■ The Bail Reform Act specifies mandatorily that conditions of pretrial release be set for defendants accused of noncapital offenses.[4] When imposing

---

1. In the last two months, this court has considered as many pretrial bail appeals as it had in the preceding eight months.

2. 18 U.S.C. §§ 3146–3152 (Supp. III, 1965–67).

3. A comparison of 18 U.S.C. §§ 3146 and 3148 indicates convincingly that danger is not to be considered prior to trial in a noncapital case. Any lingering doubt on that score may be put to rest by a perusal of the legislative history of the Act, cited and summarized in Allen v. United States, 128 U.S.App.D.C. 207,

212–214, 386 F.2d 634, 639–641 (1967) (dissenting opinion).

4. The Act provides:
   Any person charged with an offense, other than an offense punishable by death, shall * * * be ordered released pending trial * * * unless the officer determines * * * that such a release will not reasonably assure the appearance of the person as required. When such a determination is made, the judicial officer shall * * * impose the first of the fol-

these conditions, the sole concern of the judicial officer charged with this duty is in establishing the minimal conditions which will "reasonably assure the appearance of the person for trial * * *." [5] The structure of the Act and its legislative history make it clear that in noncapital cases pretrial detention cannot be premised upon an assessment of danger to the public should the accused be released.[6]

The Act creates a presumption in favor of releasability on personal recognizance or upon the execution of an unsecured appearance bond.[7] It is "only if 'such a release will not reasonably assure the appearance of the person as required' that other conditions of release may be imposed." [8] Congress has established a hierarchy of less favored conditions which may be considered, but which may be utilized only in the event that no preferred condition is deemed adequate to assure appearance.[9] And so it is that the imposition of a money bond is proper only after all other nonfinancial conditions have been found inadequate.

The low priority given by Congress to monetary conditions was enacted into the statute in order to prevent pretrial detention resulting from indigency.[10] The authors of the Act were fully aware that the setting of bond unreachable because of its amount would be tantamount to setting no conditions at all. Conditions which are impossible to meet are not to be permitted to serve as devices to thwart the plain purposes of the Act, nor are they to serve as a thinly veiled cloak for preventive detention.

In No. 22,818, appellant Williams has been incarcerated for more than three months pending his trial on a robbery charge due to his inability to post a $5,000 bond which was set by a General Sessions Judge and left intact on review by a District Judge. Neither judge apparently felt that lesser, nonfinancial conditions could adequately guard against a risk of flight to avoid prosecution. This position was taken in full light of appellant Williams' fairly steady employment record, his apparant lack of any prior

---

lowing conditions of release which will reasonably assure the appearance of the person for trial * * *.
18 U.S.C. § 3146(a) (Supp. III, 1965–1967).

5. *Id.*

6. *See* note 3, *supra.*

7. *See* S.Rep.No.750, 89th Cong., 1st Sess. p. 10. *See also* H.R.Rep.No.1541, 89th Cong., 2d Sess. p. 10; White v. United States, 134 U.S.App.D.C. 14, at 16, 412 F.2d 145, at 147 (Nov. 22, 1968).

8. Wood v. United States, 129 U.S.App. D.C. 143, 145, 391 F.2d 981, 983 (1968), *quoting* 18 U.S.C. § 3146(a) (Supp. III, 1965–67).

9. The judicial officer is to impose, in lieu of the favored conditions, "the first of the following conditions of release which will reasonably assure the appearance of the person for trial or, if no single condition gives that assurance, any combination of the following conditions:
   (1) place the person in the custody of a designated person or organization agreeing to supervise him;
   (2) place restrictions on the travel, association, or place of abode of the person during the period of release;
   (3) require the execution of an appearance bond in a specified amount and the deposit in the registry of the court, in cash or other security as directed, of a sum not to exceed 10 per centum of the amount of the bond, such deposit to be returned upon the performance of the conditions of release;
   (4) require the execution of a bail bond with sufficient solvent sureties, or the deposit of cash in lieu thereof; or
   (5) impose any other condition deemed reasonably necessary to assure appearance as required, including a condition requiring that the person return to custody after specified hours."
18 U.S.C. § 3146(a) (Supp. III, 1965–67).

10. *See* the extensive congressional history which has been gathered by Chief Judge Bazelon in his dissent in Allen v. United States, 128 U.S.App.D.C. 207, 210–212, 386 F.2d 634, 637–639 (1967).

criminal record,[11] and his stable family life in the District of Columbia. He has resided in the District for the past five years and for 14 of his 23 years since birth. The only indication of a lack of attachment to this community is that he spent the second month prior to his arrest with his wife in West Virginia. The District of Columbia Bail Agency recommended that Williams be released on his personal recognizance, and on appeal the Government has confessed error, stating that it is "unable to argue that * * * nonmonetary conditions of release [other] than personal bond have been considered and properly rejected." Thus, not even the Government would assert that the order denying release of this appellant is affirmable as one "supported by the proceedings below." [12]

Appellant Leathers, in No. 22,816, was initially detained on a $1,500 bond pending trial on a charge of unauthorized use of a vehicle. The District Court has since reduced this amount to $1,000, but this indigent appellant is unable to meet even the lesser amount. The factual record presented to this court on this appellant's behalf, however, is sparse. The Bail Agency has stated that it has been unable to verify various pertinent facts concerning him, and defense counsel has apparently been unable to meet the requirements set by this court's Rule 17(d), which refers to various types of information that must be furnished in pretrial bail appeals brought here. It is understandable why the judges to whom Leathers heretofore applied have been unable to structure nonfinancial conditions of release to fit appellant's case, for they have had to operate in a factual vacuum.

---

11. Although the General Sessions Judge stated that grand jury action was pending against Williams on another charge, this fact is not confirmed elsewhere in the record. The Bail Agency's report and appellant's memorandum to this court state that appellant has no prior criminal record, and the Government does not refer to any such record. In this situation, even if a prior record exists, we would feel safe in minimizing its importance.

## II.

In neither of the cases before us is there any indication that the District Judge gave consideration to nonfinancial conditions of release as alternatives to the imposition of a high money bond, despite the clear congressional mandate that a money bond be imposed only when no other conditions appear sufficient to guard against flight. Nonfinancial conditions, our decisions have made clear,[13] should be used flexibly, varying with the needs of the individual defendant. The Act itself points to third-party custody arrangements and restrictions on travel and association.[14] If it appears that alcoholic or narcotic problems might give rise to a risk of flight, various public programs are available for outpatient treatment and control of the individual's addiction. Another condition available is required employment and the attendant close supervision by the defendant's employer. As a later resort, there is a work-release program in the District which permits an appellant to work during the day and return to confinement at night. A similar program permitting greater liberty could involve employment by day and nighttime residence in a "half-way" house.

Well-designed reporting procedures can reduce the temptation to flee by providing for prompt communications with judicial authorities if the individual departs from his usual routine. If conditions of release are violated, such a report can lead to prompt apprehension and possible prosecution under the criminal bail-jumping provision.[15] All conditions of pretrial release have as their goal the close supervision of the defend-

---

12. *See* 18 U.S.C. § 3147(b) (Supp. III, 1965–67).

13. *See, e. g.*, Weaver v. United States, 131 U.S.App.D.C. 388. 405 F.2d 353 (1968); Chapman v. United States, 133 U.S.App. D.C. 73, 408 F.2d 1276 (Jan. 24, 1969) (dissenting opinion).

14. *See* note 9, *supra*.

15. 18 U.S.C. § 3150 (Supp. III, 1965–67).

ant in order to curtail his opportunity to flee. A desirable by-product is that often any danger to the public presented by the release can also be minimized.

While it is the judicial officer who is required to set the conditions of release and who has a duty to inquire into these alternatives to monetary conditions,[16] he can greatly be assisted by defense counsel who can help frame the best minimal set of restrictions which would fit his client's situation. Defense counsel must be prepared to provide this service and to play a significant role in supplying the judge with adequate information upon which to make his determination.[17]

The District of Columbia Bail Agency also shoulders significant responsibilities in proposing appropriate conditions of release. The Agency is statutorily required "when practicable," to prepare reports on the factual background of each candidate for bail.[18] The Agency is likewise required to recommend release of the individual on personal recognizance, personal bond, or other nonfinancial conditions of release when these conditions are appropriate.[19] If the Agency finds itself unable to engage in a creative search for nonfinancial conditions of release because of a shortage of staff and funds—as is reportedly often the case—serious questions would arise concerning compliance with the Bail Agency Act and equal treatment of the rich and poor unless the trial judge seeks to fill the void left by the failure of the Bail Agency to perform its statutory function. This might be done by requiring the parties to submit alternative conditions of release, so the court would have before it more than a request for personal recognizance on the one hand and insistence on high money bond on the other.

■ Because we find that in the two cases before us sufficient attention has not been given toward fashioning programs of release based upon nonfinancial restrictions rather than unreachable money bonds, we remand these cases to the District Court for consideration of those minimal nonfinancial conditions of release which will "assure the appearance of the person as required."

So ordered.

---

16. Weaver v. United States, 131 U.S.App. D.C. 388, 389, 405 F.2d 353, 354 (1968). The judicial officer is also required to set forth his reasons why lesser conditions than those which he has set forth would not assure that the person will not flee. *See Id.*

17. *See, e. g.,* FED.R.CRIM.P. 46(c); D.C. Cir.R. 17(d).

18. D.C.CODE § 23–903(a) (1967).

19. The Agency may not, however, recommend a money bond. *Id.*