**UNITED STATES of America,**
**Appellee,**

v.

**Andrew B. JACKSON, Appellant.**

**No. 22673.**

United States Court of Appeals
District of Columbia Circuit.

May 16, 1969.

Burger, Circuit Judge, dissented.

Mr. Carl P. Fogel, Washington, D. C., was on the motion for appellant.

Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on appellee's opposition to the motion.

Before BURGER, WRIGHT and ROBINSON, Circuit Judges.

PER CURIAM:

Appellant was convicted in the District Court on single but related counts of burglary [1] and grand larceny,[2] and was sentenced to concurrent terms of three to ten years' imprisonment. During the approximately ten months ensuing between his arrest and sentencing, he had remained at liberty in the community.[3] On the day the sentences were imposed, he moved the court for continued enlargement pending a contemplated appeal from his conviction. The District Judge denied the motion, expressing no reasons for his action. Thereafter, the judge allowed appellant to appeal *in forma pauperis*, and the motion for release was renewed in this court.

■ The District Judge's grant of leave to appeal rested necessarily on the conclusion, not subjected to attack here, that the appeal is not frivolous and was not taken for purposes of delay. Consequently, appellant should be enlarged pending disposition of the appeal unless his release portends flight or threatens danger to the community.[4] These risks, moreover, are to be measured only in terms of conduct that cannot be reasonably safeguarded against by an imposition of conditions upon the release.[5]

Appellant's record presents inconsistent indications as to both the likelihood of flight and his potential for harming the community. In the early 1960s, he was sought as a fugitive on a burglary charge in Virginia, and last year, after his arrest in the instant case, he failed to appear on the date scheduled for his arraignment on a manslaughter charge in the District of Columbia.[6] The ten-year maximum sentence in the instant case and the still-pending manslaughter charge could by possibility augur a temptation to flee. On the other hand, appellant has very substantial ties with the local community. He was born in the District and, although he has committed crimes in other jurisdictions,[7] has lived here most of his life. His wife and child, with whom he resided, are here, as are his parents and other members of his family. For about a

---

1. D.C.Code § 22–1801 (Supp. II 1969).

2. D.C.Code § 22–2201 (1967 ed.).

3. The offenses are charged as occurrences on February 1, 1968. He was arrested on February 28 and released on the same day. On July 26, after his indictment, he was released on personal recognizance and remained enlarged until December 20, the date of sentencing.

4. 18 U.S.C. § 3148 (1966); Weaver v. United States, 131 U.S.App.D.C. 388, 389, 405 F.2d 353, 354 (1968).

5. 18 U.S.C. § 3148 (1966); United States v. Leathers, 134 U.S.App.D.C. 38, 39–40, 412 F.2d 169, 170–71 (1969).

6. We have not been furnished details beyond these basics. We note, however, that whatever the circumstances surrounding appellant's nonappearance in the manslaughter case happened to be, they were not sufficient to cause the court to revoke his freedom. See note 3, *supra*.

7. See note 8, *infra*.

year prior to his incarceration, appellant was employed as collection manager by the operator of a group of apartments. His employer, citing his "excellent personnel record," awaits his release and resumption of the responsibilities of that position.

We find in the record somewhat similar contradictions as to appellant's dangerousness. Between 1958, when appellant was but 18 years old, and 1963, he was thrice convicted, but of property-type offenses,[8] and since has been thrice accused of crimes of violence.[9] The question, however, is not whether appellant was dangerous in the past, but whether he can reasonably be considered so now. Since 1963, his only conviction was in the instant case, and the validity of the conviction, of course, is at issue in the pending appeal. Additionally, since the early years, appellant, as we have said, has acquired a wife and child and a rather impressive work record.[10] These signs of present stability inveigh, in some degree at least, against the danger assumed from the past criminal record.

Rule 9(b) of the Federal Rules of Appellate Procedure specifies that "[i]f the district court refuses release pending appeal, * * * the court shall state in writing the reasons for the action taken." This provision, unambiguous in its language and unqualified in its mandate, performs a vital mission. In Weaver v. United States,[11] we pointed out that "[t]he District Judge's reasoning must be delineated out of both fairness to the appellant and as an aid to this court in its role in bail administration."[12] We emphasized that "[o]nly when these reasons are spelled out can an appellant intelligently renew his motion before this court; and only then can this court fairly review the merits."[13] We share, too, the view of the Advisory Committee on the Appellate Rules that "[e]qually important to the just and speedy disposition of [bail] appeals is the requirement that the district court state the reasons for its decision."[14] And as we admonished in *Weaver*, "Rule 9 is clear and direct in its command, and we are not disposed to undercut its policies by generally dispensing with its observance."[15]

█ We do not know whether the District Judge deemed appellant a potential fugitive or a potential menace to the community, or in either event precisely why. Nor do we know just what consideration he may have given to an imposition of conditions with a view to minimizing the risks of flight and danger. These, of course, are initially subjects for the District Judge's inquiry and decision, and we intimate no view as to them. On the contrary, our practice is to defer to the District Judge's determinations when deference is due,[16] in preference to a de novo investigation and ruling on our own—either for or against release. With evidence here

8. Breaking and entering (Florida), 1958; burglary (Virginia), 1962; receiving stolen property (Maryland), 1963. And see note 9, *infra*.

9. Charge of robbery, 1967, dismissed for want of prosecution; charge of assault with a dangerous weapon, 1968, nolle prossed; charges of manslaughter and carrying a dangerous weapon, 1968, awaiting trial. We have no further details as to any of these matters. Additionally, there was a conviction of negligent homicide arising from an automobile accident in 1963, which was reversed for a new trial which apparently was never held.

10. Counsel for appellant informs us that during an episode of rioting at the Lorton Reformatory, appellant saved the life of one of the guards by dressing him in prison clothing and escorting him to the gate.

11. *Supra* note 4.

12. Weaver v. United States, *supra* note 4, 131 U.S.App.D.C. at 389, 405 F.2d at 354.

13. Id.

14. Advisory Committee Note to Fed.R. App.P. 9(a).

15. Weaver v. United States, *supra* note 4, 131 U.S.App.D.C. at 390, 405 F.2d at 355.

16. Weaver v. United States, *supra* note 4, 131 U.S.App.D.C. at 389, 405 F.2d at 354, and cases cited.

pointing both ways on the issues of flight and danger, we cannot intelligently perform our review responsibilities without an understanding of the District Judge's decisional basis.[17]

We hold appellant's motion in abeyance, and remand the record to the District Judge for the statement of reasons required by Rule 9.

So ordered.

BURGER, Circuit Judge (dissenting):

The reasons for the District Court's denial of bail are so obvious as to require no explanation. Appellant's record, standing alone, constitutes abundant "reasons":

August 12, 1958—Breaking and entering (Florida), 2 years.

August, 1961—Fugitive from Justice (Virginia) for Burglary, one year plus parole.

February, 1962—Burglary (Virginia), 2 years.

January, 1963—Receiving Stolen Property (Maryland), 1 year.

April, 1963—Negligent Homicide conviction (auto) carrying 270 day penalty reversed for new trial, which was apparently not held.

November, 1967—Robbery, dismissed for want of prosecution.

February 1, 1968—instant offense.

May, 1968—ADW, nolle prossed.

May, 1968—Manslaughter, CDW, awaiting trial in the District of Columbia.

June, 1968—bench warrant executed for failing to appear for manslaughter.

If this record is not adequate for appellate review, I have difficulty seeing how a District Judge could write anything which would be very helpful to me. Indeed, it would be incredible if the District Judge—or any judge—would release Appellant pending his appeal against the background of his record.

On its face, Appellant's record shows abundant evidence of pressures to flee the jurisdiction to avoid being confronted with yet another serious criminal charge; moreover, one year ago he failed to appear on a pending homicide charge and a bench warrant was issued to apprehend and produce him. Independent of all other factors, one who exhibits chronic tendencies toward criminal conduct is an obvious danger to the community and these factors are not divisible from those which make him a likely prospective fugitive.

We have expressed deep concern over crowded criminal dockets which led the District Court to assign 13 of its 14 Active Judges to criminal cases and in these circumstances I should think it sound to conclude that those judges have more important things to do than writing ritualistic memoranda for our edification on a record as plain as this one. Certainly even Rule 9(b) of F.R.A.P. would be satisfied if the District Judge endorsed on the release motion "Denied —Defendant's criminal record." and on this record I have no difficulty in reading that into the action of that court.

---

17. The Government, preferring an order denying appellant's renewed motion for release, concedes the appropriateness of a remand for a statement of the District Judge's reasons.