**Norman PANNELL, Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 17557.**

United States Court of Appeals
District of Columbia Circuit.

May 16, 1963.

See also 319 F.2d 740.

Mr. Robert B. Yorty, Washington, D. C. (appointed by this court) was on the motion for appellant.

Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Gerald A. Messerman, Asst. U. S. Attys., were on the opposition for appellee.

Before BAZELON, Chief Judge, and BURGER and WRIGHT, Circuit Judges, in chambers.

BURGER, Circuit Judge.

Appellant's application for release on bond pending appeal is granted and bail is fixed at $5000.

Appellant having been indicted with his wife and five others on multiple counts for violation of narcotics statutes was convicted on three counts. Pending trial he was released on $5000 bail. After conviction the District Court granted an appeal at public expense but denied bail. For all practical purposes. direct appeal from conviction at government expense can no longer be denied by the District Court or this court except on the same basis as in paid appeals. Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Hence no evaluation of the merits of an appeal can be read into the action of a District Judge in granting an appeal in forma pauperis. Until appellant's conviction he was presumed innocent but that presumption is altered with guilty verdict and judgment.

As one who has been previously convicted on a narcotics charge and now stands convicted a second time, his posture for bail purposes has changed from what it was before trial and verdict. His job opportunities after two narcotics convictions are hardly the best and we must view his claim that he can secure gainful employment only as a hopeful objective not supported by any evidence. A firm commitment for employment would be a relevant consideration to any consideration of bail pending appeal.

Fixing the amount of bail once it is decided to grant bail is at best a

difficult task for which there are few genuine guide lines. We can see no basis on this record for *reducing* the amount of bail now that appellant has been convicted a second time on serious narcotics charges; nor can we anticipate the impact of changes—and we hope improvements—which will result from current studies on the subject of bail.

J. SKELLY WRIGHT, Circuit Judge (concurring).

I join with Chief Judge Bazelon in his hope for reform of bail proceedings. Certainly the professional bondsman system as used in this District is odious at best. The effect of such a system is that the professional bondsmen hold the keys to the jail in their pockets. They determine for whom they will act as surety— who in their judgment is a good risk. The bad risks, in the bondsmen's judgment, *and the ones who are unable to pay the bondsmen's fees*, remain in jail. The court and the commissioner are relegated to the relatively unimportant chore of fixing the amount of bail.

The result of this system in the District of Columbia is that most defendants, for months on end, languish in jail unable to make bond awaiting disposition of their cases. Instead of being allowed the opportunity of obtaining worthwhile employment to support their families, and perhaps to pay at least in part for their defense, almost 90 per cent of the defendants proceed in forma pauperis, thus casting an unfair burden on the members of the bar of this community who are required to represent these defendants without pay.

When the long-delayed bail reforms finally become a reality, it is hoped that the accent will be on allowing defendants release on their own recognizance, with adequate and certain penalties for non-appearance. Today fugitives do not go very far or maintain their status as such very long, so no money guarantee is required to insure their appearance when ordered. Encouragement to appear should not be in the form of loss of the bondsman's money, but rather in loss of the defendant's liberty. Actually, under the professional bondsman system the only one who loses money for non-appearance is the professional bondsman, the money paid to obtain the bond being lost to the defendant in any event.

While we are waiting for the hoped-for reforms, we must decide applications for bail under the present rules. Rule 46(a) (2), F.R.Cr.P., provides that "[b]ail may be allowed pending appeal * * *." And it is clear that it should be allowed on terms which "will insure the presence of the defendant, having regard to the nature and circumstances of the offense charged, the weight of the evidence against him, the financial ability of the defendant to give bail and the character of the defendant." Rule 46(c), F.R.Cr.P. Special emphasis, of course, should be placed on "the financial ability of the defendant to give bail," because if the defendant cannot make the bail set, he is effectively denied bail. See Bandy v. United States, 81 S.Ct. 197, 5 L.Ed.2d 218 (1960). Nevertheless, the financial ability of the defendant under the present rule is only one of four criteria to be considered in determining what amount of bail will insure the presence of the defendant. Obviously the other three may not be overlooked completely, even if considering them, along with the financial ability of the defendant, results in an inability to make the bail.

In any event, the question of amount of bail is always before the court. The court is not required to accept unsupported assertions, such as made here, that the appellant has a job waiting for him, while his wife remains in jail, or that he cannot make more than $2,500 bail. The record shows he made $5,000 bail in the District Court before his conviction. The best way to test whether or not he can make $5,000 pending appeal is to set the bail at $5,000. If he does not make it, then the court can entertain an application for reduction of bail.

BAZELON, Chief Judge (concurring in part and dissenting in part).

This is an application for bail pending appeal. Appellant, together with his wife and five other persons, was indicted on 22 counts of violating and conspiring to violate various Federal narcotics statutes. He was released on $5,000 bail before trial and appeared as required. Upon trial he was acquitted on the conspiracy counts but convicted on three counts of violating the narcotics statutes, and sentenced to five years imprisonment. Although the District Court granted leave to appeal in forma pauperis, it terminated appellant's pre-trial bail and denied his application for bail pending appeal. He renews the application in this court through counsel whom we appointed to present the appeal.

The application enumerates the three questions urged on appeal, each of which, on its face, appears to raise substantial and important questions of law, and none of which can be characterized as frivolous.[1]

The application also states:

Appellant informs counsel that he was born in the District of Columbia and has been a life-time resident here. For 10 years prior to February, 1961, appellant states he worked as a parking attendant at the Cosmos Club. According to appellant, his only prior conviction was in the Municipal Court for the District of Columbia for unlawful possession of narcotics, the sentence received having been 90 days imprisonment. His present confinement is a particular hardship to appellant since he is unable to make suitable arrangements for the care and custody of his three children, ages 5, 4 and 2 years. They are presently living, under extremely crowded conditions, with appellant's sister-in-law who has four children of

her own. Moreover, appellant's wife Valeria who is also appealing her conviction in the instant case, is expecting her fourth child. It is the desire of appellant's wife that Norman [appellant] alone obtain an opportunity to be released on bond so that appellant can get a job and make decent arrangements for the care of present chidren and of the new child upon its arrival. Counsel is informed employment can be arranged for appellant upon his release.

Appellant requests that, if bail is granted, it be set no higher than $2,500 since "he would be unable to obtain funds to finance the premium on a bond in excess of $2,500."

The Government's "opposition to application for bail pending appeal" contains only the following conclusory allegations:

In view of the nature of the offense, the ample evidence to support the conviction, the indication that appellant was seriously involved in narcotics activities, and the insubstantial nature of the allegations raised on appeal, the United States opposes appellant's application for bail pending appeal. If bail is set pending this appeal, the government recommends that it not be set below $10,000.

Rule 46(a) (2), Fed.R.Crim.P., sets out in general terms the criteria for granting bail pending appeal. "Bail may be allowed pending appeal or certiorari unless it appears that the appeal is frivolous or taken for delay." Rule 33(f) of the General Rules of this court elaborates on this criterion as follows:

"In addition to the question whether the appeal is frivolous, or

---

1. Briefly summarized they are: (a) whether the trial court's denial of appellant's motion for severance was prejudicial error because only three of the alleged 33 overt acts related to appellant; (b) whether the defense of entrapment was established as a matter of law; and (c) whether testimony concerning other alleged narcotics violations should have been admitted into evidence over timely objection.

Since leave to appeal in forma pauperis has been granted by the trial court, there has been a judicial determination that the appeal is not frivolous or taken for delay.

taken for delay, the following factors, among others, may be considered by the court in determining whether bail should be allowed: (1) [w]hether the safety of the community would be jeopardized; and (2) [w]hether there is likelihood of appellant fleeing or going into hiding. * * *"

Rule 46(c), Fed.R.Crim.P., sets out the criteria for setting the amount of bail as follows:

"If the defendant is admitted to bail, the amount thereof shall be such as in the judgment of the commissioner or court or judge or justice will insure the presence of the defendant, having regard to the nature and circumstances of the offense charged, the weight of the evidence against him, the financial ability of the defendant to give bail and the character of the defendant." [2]

If the appeal is not frivolous or taken for delay, "bail should ordinarily be granted * * *. It is to be denied only in cases in which, from substantial evidence, it seems clear that the right to bail may be abused or the community may be threatened by the applicant's release. [Citing cases.]" Leigh v. United States, 82A S.Ct. 994, 8 L.Ed.2d 269 (1962), opinion of Chief Justice Warren sitting as Circuit Justice for the District of Columbia Circuit. Rule 46(a) (2) places a substantial burden on the Government to persuade the court that bail should not be allowed. See Ward v. United States, 76 S.Ct. 1063, 1 L.Ed.2d 25 (1956), opinion of Mr. Justice Frankfurter, as Circuit Justice.

Clearly the Government's conclusory allegations here—none of which bear any relation to the criteria for granting bail set out in Rule 33(f)—do not discharge its burden of disproving appellant's claims that his release would not jeopardize the safety of the community and that he would not flee. I must conclude therefore that appellant is entitled to release on bail.

My brethren apparently agree with this conclusion. But they set bail at $5,000, despite appellant's uncontradicted allegation that he is unable to pay the premium on bail of more than $2,500. Thus release is barred because of appellant's financial condition. Mr. Justice Douglas has reminded us that "It would be unconstitutional to fix excessive bail to assure that a defendant will not gain his freedom * * *. Yet in the case of an indigent defendant, the fixing of bail in even a modest amount may have the practical effect of denying him release." Bandy v. United States, 81 S.Ct. 197, 5 L.Ed.2d 218 (1960).

As I see it, the critical threshold determination in considering an application for bail pending appeal is whether appellant is eligible for release. If it is affirmatively shown that upon release appellant would be likely either to (a) harm the community or (b) fail to appear as required, he is ineligible and may not be released under any conditions or amount of bail. But absent such showing, he is eligible and indeed must be permitted to secure his release upon meeting reasonable conditions. To impose a financial requirement which is beyond his means is unreasonable and, of course, makes the determination of eligibility purposeless.

It is frequently urged that eligibility for release and the amount of the bond are intimately related, because the higher the bail the less "likelihood [there is] of appellant fleeing or going into hiding." [3] This argument presupposes that an appellant with higher bail has a more substantial stake and therefore a greater incentive not to flee. This may be true if no professional bondsman is involved. But if one is, it is he and not the court

2. These criteria are essentially the same as those set out in the second part of Rule 33(f) of this court.

3. We may safely assume, as does Rule 46 (c), Fed.R.Crim.P., that the amount of bail bears no relationship to "whether the safety of the community would be jeopardized" by appellant's release.

who determines appellant's real stake. Under present practice the bondsman ordinarily makes the decision whether or not to require collateral for the bond. If he does, then appellant's stake may be related to the amount of the bond.[4] If he does not, then appellant has no real financial stake in complying with the conditions of the bond, regardless of the amount, since the fee paid for the bond is not refundable under any circumstances. Hence the court does not decide—or even know—whether a higher bond for a particular applicant means that he has a greater stake. We should not, therefore, assume that it does.

Moreover, even if we knew that the bondsman would require collateral from a particular appellant, we should recognize that an impecunious person who pledges a small amount of collateral constituting all or almost all of his property is likely to have a stake at least as great as that of a wealthy person who pledges a large amount constituting a modest part of his property.

We continue to ignore all of these realties by blindly applying artificial rules which distort the purposes of bail, exaggerate the influence of professional bondsmen,[5] and effect purposeless and unconstitutional discrimination against the poor. There is, however, some hope for reform in the near future. The preliminary draft of proposed amendments to the Federal Rules of Criminal Procedure includes some important changes, which shift the focus from the present monetary orientation of bail to a more functional supervisory approach.[6]

Of course the keynote to successful administration of any system of bail is the adequacy of the information upon which the decisions are based. The information in this case was patently inadequate. It is to be hoped that, under the new rules, if and when they are adopted, the information offered will insure a more intelligent exercise of our judicial responsibility.

4. If collateral is required, the bondsman will have little or no stake in appellant's compliance. I do not mean by this observation to imply approval of the bondsman's anachronistic role of private jailer, to assure appellant's compliance with the conditions of his bond. See, e. g., Note, Bail: An Ancient Practice Reexamined, 70 Yale L.J. 966 (1961).

5. For example, in a case recently decided by this court bail had been set at $500 since December 17, 1962 for one appellant and since February 8, 1963 for a second. On February 21, 1963 counsel in the case informed the court that "neither [appellant] has yet been able to pay the $40 premium for a $500 bond, although both are from the local area and have relatives here." On April 11, 1963, the conviction of one appellant was affirmed; the conviction of the other was reversed with instructions to enter a judgment of acquittal. Stevens v. United States (Mackey v. United States), 115 U. S.App.D.C. ——, 319 F.2d 733.

6. See, e. g., proposed change in Rule 46(d) which provides:
"The commissioner or court or judge or justice, having regard to the considerations set forth in subdivision (c), may require one or more sureties, may authorize the acceptance of cash or bonds or notes of the United States in an amount equal to or less than the face amount of the bond, or may authorize the release of the defendant without security upon such conditions as may be prescribed to insure his appearance. Each person admitted to bail shall have called to his attention the penalties imposed by law for willful failure to appear in accordance with the terms of the bond."