James A. McCOY, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 19258, 19438.

United States Court of Appeals
District of Columbia Circuit.

Order Filed Dec. 31, 1965.

Opinion Filed Jan. 17, 1966.

Burger, Circuit Judge, dissented.

Miss Barbara A. Babcock (appointed by this court) Washington, D. C., was on the pleadings for appellant. Mr. Thomas A. Wadden, Jr., (also appointed by this court) Washington, D. C., entered an appearance for appellant.

Messrs. Frank Q. Nebeker and Allan M. Palmer, Washington, D. C., were on the pleadings for appellee.

Before BAZELON, Chief Judge, and BURGER and LEVENTHAL, Circuit Judges, in chambers.

LEVENTHAL, Circuit Judge.

McCoy has appealed from convictions of an unauthorized use of an automobile and contempt of court, the latter arising out of his conduct at the beginning of trial on the former charge.

The District Court allowed in each case an appeal without prepayment of costs, ordered the preparation of transcripts and referred to this court a motion for the appointment of counsel. With full consideration of appellant's background,[1] Judge Hart set bail pend-

1. Appellant has no prior convictions as an adult. Apparently he was twice committed to institutions as a juvenile, on charges of housebreaking.

ing appeal in the sum of $1000. Upon the *pro se* motion of appellant, he later reduced that amount to $500.

This court appointed counsel, who has now moved for appellant's release on personal recognizance pending appeal. Counsel represents to us that although the premium on a $500 bond is only $40, none of the bondsmen contacted by counsel or by appellant's family will write the bond. Counsel states:

> The reason given by the bondsmen is that once a man has actually served some of his time in prison and is released on bond, he will, if his appeal is unsuccessful, flee the jurisdiction rather than return to finish serving his sentence.

■ The decision of Judge Hart to admit appellant to bail pending appeal is plainly supported on the record: Appellant has no previous convictions; he is a lifelong resident of the District of Columbia; if released, he would live in the city with his mother, brother, grandfather, and two aunts, with whom he lived at the time of his arrest.

■ It would be manifestly unjust to permit professional bondsmen to "hold the keys to the jail in their pockets,"[2] when their refusal to write a bond is due to the fact that the appellant has begun serving his sentence. This approach would indeed penalize appellant doubly and harshly for his inability to provide bail promptly. It is plainly at odds with the general view that bail should be provided pending appeal unless the Government meets its burden of making a contrary showing, e. g. of dangerousness to the community.[3] While no such showing has been made to us, we deem it appropriate to observe that the injustice would be pyramided unconscionably if it should appear that a bondsman's unwillingness

to take the risk is heightened where, as in this case, the appellant is young, is not "well known" to him through past involvements, and offers only modest opportunity for gain due to the low amount of bond.

■ Under the circumstances of this case, we have implemented the District Court's decision to admit the appellant to bail by entering an order providing—

(1) Appellant is admitted to bail upon the execution of a personal bond of $500, the bond to be signed by appellant and any two of his close relatives—mother, father, grandfather, two aunts, all of whom reside in the District.

(2) Appellant shall reside with a member of his family.

(3) Appellant shall report to the Probation Officer of the U. S. District Court for the District of Columbia on such terms as the latter may impose.

■ We think it appropriate for the courts to avail themselves of their flexibility to vary terms and conditions as well as amounts of bail, and provide substitutes, in the case of indigent defendants, for conventional bonds of professional bondsmen.[4]

The young man with established family contacts would seem as likely, if not more likely, to respect the bond when a violation will mean financial loss not to a bondsman but to members of his immediate family.

It is for the foregoing reasons that on December 31, 1965, we entered our order described above.

BURGER, Circuit Judge (dissenting).

As indicated when the order for release was entered, I would not reach the issues covered by the foregoing opinion

2. Pannell v. United States, 115 U.S.App. D.C. 379, 380, 320 F.2d 698, 699 (1963) (concurring opinion of Judge Wright).

3. Bandy v. United States, 81 S.Ct. 197, 198, 5 L.Ed.2d 218 (Circuit Justice Douglas, 1960); Leigh v. United States, 82 S.Ct. 994, 996, 8 L.Ed.2d 269 (Circuit Justice Warren, 1962).

4. Freed & Wald, Bail in the United States: 1964; *Note*, 70 Yale L.J. 966, 975 (1961). Stimulus to the use of this power of the courts may ensue from the proposed changes in Rule 46 F.R.Crim.P., declaratory of that power, recommended by the Advisory Committee in March 1964

until more detailed information on Appellant's record as a juvenile offender and the Bondsman's appraisal of Appellant as a poor risk are submitted to and evaluated by the District Court as to their relationship to possible danger to the community and the likelihood of Appellant's fleeing in the event of release on bond. Apart from this, however, I agree with Judge Leventhal's approach to the need for experimenting with variout devices for release on personal assurances to the end that more discriminating release procedures can be developed.

Burger, Circuit Judge, dissented in part.