Jack E. CHAPMAN, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 21951.

United States Court of Appeals District of Columbia Circuit.

Order Filed Oct. 2, 1968.

Opinions Filed Jan. 24, 1969.

Bazelon, Chief Judge, dissented.

Mr. John C. LaPrade (appointed by this court) was on the application for appellant.

Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the opposition to the application.

Before BAZELON, Chief Judge, and DANAHER and TAMM, Circuit Judges, in Chambers.

ORDER

PER CURIAM.

On consideration of appellant's application for release on bail pending appeal and of appellee's opposition thereto, and this Court having undertaken a *de novo* consideration of appellant's motion and having made a finding of dangerousness to the community on the uncontroverted record supplied by the United States Attorney, it is

Ordered by the Court that appellant's motion for release on bail pending appeal be denied, and it is

Further ordered by the Court, *sua sponte*, that the order of the District Court setting bail pending appeal in the amount of $500.00 is hereby vacated. See Russell v. United States, 131 U.S.App.D.C. 44, 402 F.2d 185 (1968).

DANAHER, Circuit Judge:

A majority of the sitting division previously entered an order denying Chapman's application for release pending appeal. Our colleague would have taken other action along lines noted in his dissent.

The majority's comments are now adduced because after our examination of the presentence report and our consideration of the nature of the evidence offered at trial, it seems to us that the trial judge quite justifiably must have concluded that Chapman might pose a danger[1] to some other person or to the community.

Chapman had been convicted of unauthorized use of an automobile which the owner had parked in Maryland on April 13, 1967. That car then carried Ohio plates. Police maintained a lookout for the missing automobile, and about 2 A. M. on April 22, 1967, Maryland police commenced pursuit of the wanted vehicle. Metropolitan police joined in the chase. Near the Sousa Bridge, the car jumped a curb, hit a guard rail and finally stopped just short of the river. Maryland police identified Chapman as the driver. At the time of the crash, the car bore Maryland plates.

 It is trite enough to say that gasoline and alcohol do not readily mix. Even assuming that Chapman had been shown to be addicted to the excessive use of alcoholic beverages, it might well have seemed to the District Judge that releasing this convicted person, possessed of such a propensity, would indeed compound possible danger to some other person or to the community. The

statute provides that if a risk of danger "is believed to exist" the convicted person may be ordered detained.

But that is not all. Chapman had been arrested some 20 times on charges of being drunk or disorderly and had failed to appear in court, having forfeited collateral every time. He had been convicted of housebreaking and had been placed on probation. Having become a fugitive from Maryland, Chapman was apprehended and returned to prison only to be paroled in 1965. Even after the date of the instant offense, he had been convicted of larceny and unauthorized use of an automobile and had received a sentence of 6 months and probation.

Granting that a judge must take people as he finds them, section 3148 reposes in the trial judge authority to make his determination upon what he "has reason to believe" with reference to the convicted person. Like any other judgment, that determination is presumably correct,[2] and we of the majority have not been shown that the District Judge erred.[3] We are willing to think that even if Chapman were an alcoholic, one crash while driving a stolen car is one too many and that a drunken driver is still a menace.

BAZELON, Chief Judge (dissenting):

My colleagues have denied bail on appeal from a conviction for unauthorized use of an automobile because their *de novo* review of the record leads them to think that appellant is dangerous. The basis for this finding is a criminal record which consists of 20 arrests for drunk, disorderly and drinking in public,

---

1. The applicability of that criterion in a post-conviction situation has been recognized by this court in Russell v. United States, 131 U.S.App.D.C. 44, 402 F.2d 185 (1968); for a discussion of the provisions of 18 U.S.C. § 3148 in a capital case, see my dissent in White v. United States, U.S.App.D.C. (No. 22303, Nov. 22, 1968).

2. Miller v. United States, 78 U.S. (11 Wall.) 268, 299–300 (1871); Wabash

Ry. Co. v. Bridal, 94 F.2d 117, 121 (8 Cir.), cert. denied, 305 U.S. 602, 59 S.Ct. 63, 83 L.Ed. 382 (1938); and see T.V.T. v. Basiliko, 103 U.S.App.D.C. 181, 183, 257 F.2d 185, 187 (1958).

3. Even if the order under review had been brought here pursuant to 18 U.S.C. § 3147, we would be bound to affirm since it "is supported by the proceedings below."

## 1278

and several larceny-type convictions.[1] The probation report, which we ordered produced in this Court, reveals that appellant's arrests, including the instant case, spring from his heavy drinking.[2] One instance in which his probation was revoked was also a direct result of his drinking. The child of alcoholic parents, this 23 year old man, whom testing reveals to have superior intelligence, seems on the road to the same end. Obviously, if his drinking were controlled, so would be his criminal activities.

The Bail Reform Act requires under § 3148 that the appellant be released "unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community." The majority herein have made no finding that conditions of release which curbed and treated appellant's alcoholic tendencies would not "reasonably assure" lack of dangerousness. One condition of release could be, for instance, enrollment in the community mental health facility for his neighborhood, and participation in therapy sessions for alcoholics. He could be required to check in three times a week at the Alcoholic Rehabilitation Clinic, at 1400 Q Street, N. W., to assure that he has remained free from the use of alcohol. These are only examples of an approach far more appropriate under the Bail Reform Act than the majority's finding that a criminal record, which includes not one crime of violence, and apparently no criminal activities unrelated to drinking, makes this appellant a dangerous character./

The District Court in this case set a low money bond, without further conditions, an action which appears inappropriate in light of appellant's record. A flexible use of conditions of release, such as those outlined above, to minimize dangerousness is as desirable in the release of those who can afford bail as well as those who can not. And while I believe that this Court may review *de novo* the record on the issues of dangerousness and flight, I believe that the conditions outlined above are reasonably calculated to negative dangerousness.

The judge below also erred in refusing to reexamine his bail determination when it appeared that no bondsman would write a bond for appellant. It is the duty of the District Court to make use of the flexibility of the Bail Reform Act to provide substitutes for bail bond, lest "the professional bondsmen hold the keys to the jail in their pockets."[3] To do otherwise would make the bondsmen the real decision-makers and relegate the court to "the relatively unimportant chore of fixing the amount of bail."[4]

And since appellant could obtain bond if he had five hundred dollars to post as security, the setting of a financial condition necessarily raises the question whether "the court has practiced that 'invidious discrimination' whereby a person remains incarcerated solely because of his limited financial means."[5] In light of these considerations, I would remand with directions to explore terms of release which would deal with his drinking problem.

---

1. The presentence report indicates only convictions for housebreaking and petit larceny. The government's opposition lists two more, a shoplifting conviction in 1963 and larceny in 1964.

2. Even if arrests not resulting in convictions may ordinarily be accorded some weight as indications of dangerousness, it is clear enough in the present case that

the real risk is appellant's disposition to alcohol, not crime.

3. Pannell v. United States, 115 U.S.App. D.C. 379, 380, 320 F.2d 698, 699 (1963) (Wright, J., concurring).

4. *Id.*

5. Russell v. United States, 131 U.S.App. D.C. 45, 402 F.2d 185, 186 (1968).