UNITED STATES of America

v.

**Brian G. COOK, Appellant.**

**No. 24555.**

United States Court of Appeals,
District of Columbia Circuit.

Nov. 12, 1970.

Bazelon, Chief Judge, concurred and filed opinion.

Mr. Brendan G. Fitzpatrick, Washington, D. C., was on the memorandum of law and fact for appellant.

Mr. Thomas A. Flannery, U. S. Atty., and Mr. John A. Terry, Asst. U. S. Atty., were on the opposition for appellee.

Before BAZELON, Chief Judge, and MacKINNON, Circuit Judge.

MacKINNON, Circuit Judge:

Appellant Cook appeals from an order of the trial court denying his conditional release or reduction of the $100,000 surety bond set as bail by the committing magistrate pending disposition of the case in the District Court.

Appellant was indicted on July 17, 1970 on 17 counts for violations of the Federal Securities Acts by the sale of unregistered securities and fraud in the sale of securities and fraud by wire. The indictment returned by the grand jury specified eight victims who were defrauded in their purchase of a total of 32,800 shares of common stock of a corporation known as Cook Jet. The indictment further alleges that Cook offered, sold and caused to be offered and sold a total of about $180,000 of unregistered Cook Jet securities to investors. At the hearing on the bail bond order set by the committing magistrate the District Court found that appellant lacked substantial ties to the community, was apprehensive that appellant would flee if released on his personal recognizance and refused to lower the magistrate's bail requirement that appellant's release be conditioned upon filing of $100,000 surety bond.

■ We are faced with the familiar argument that appellant claims to be an indigent and cannot put up a bond of this size and consequently he should be released on his personal recognizance and upon compliance with non-financial conditions. When this argument is carried to its logical conclusion, every indigent person would always be released on non-financial conditions and the requirement for reasonable bail would be meaningless as it would be turned into a requirement for release of all indigents without bail and solely on non-financial conditions in every instance. In our opinion, the requirement for reasonable bail is a direction that bail be imposed that is reasonable when consideration is given to all circumstances of the case: the nature of the crime, its enormity, the character of the defendant, his ties to the community and similar items.

■ Here it is represented that appellant is in default on a $100,000 loan from the *Public National Bank of the District of Columbia*; that appellant was influential in obtaining a $100,000 Small Business Administration loan for North American Detergents, a corporation with which appellant was previously employed as comptroller; and that an informant represented by the Assistant United States Attorney as being one who had given reliable information to the FBI in the past had reported that appellant had said if he were free he would flee. In addition to this the record indicates that appellant has freely moved around the United States and Europe visiting in rapid succession England, Spain, Chicago and Washington, D. C. Under these circumstances, while a $100,000 surety bond is a large sum of money, still it is common knowledge that a person of good repute could obtain one upon the payment of a premium of about $50 per thousand dollars. The magnitude of appellant's past transactions and his business associations indicate that this amount of money might be available to him. If he is unable to obtain a surety bond it would be not his inability to meet the premium for the bond but his character and the likelihood that he might flee the jurisdiction that would most likely prove to be a stumbling block to securing his release on bail. The trial court considered the entire situation in connection with appellant's application for conditional release and refused to grant said application, upheld the amount of the bail bond and made oral findings as follows:

> [T]he thing that disturbed me were the lack of defendant's ties in the community, the little, if any, involved rationship [*sic*] between him and the two persons who were suggested for third party custody, and when you consider that within the framework of the offenses of which he is charged, together with what has been adduced here as to his present financial resources, I think that under all conditions the bond should be a higher one.

It thus appears that this is a case where the court has concluded that release on non-financial conditions will not assure appellant's appearance. In such case other conditions of release may be imposed. *Wood v. United States,* 129 U.S. App.D.C. 143, 145, 391 F.2d 981, 983 (1968); *United States v. Leathers,* 134 U.S.App.D.C. 38, 40, 412 F.2d 169, 171 (1969).[1]

1. The trial court considered and by its action rejected all the non-financial conditions which are urged upon us at this time. These included (1) surrendering his Canadian passport, (2) reporting daily to the bail agency and weekly to his attorney, (3) release in the custody of named third persons, (4) acceptance of specified employment, and (5) agreeing to sign a waiver of extradition from any country. As to the proposal that he would execute in advance a waiver of extradition from any country, it should be noted that this is a Securities Act offense and our treaties, at the present time, with the principal foreign countries make extradition in such cases difficult, if not impossible. So this condition is novel and might well prove to be ineffective. Under such circumstances it should be rejected.

This brings us to the amount of a monetary surety bond that might guarantee appellant's appearance. He is charged with 17 offenses that cumulatively call for fines of $81,000. Of course, there is always the possibility that while appellant is stated to have no prior record, the circumstances of the numerous alleged frauds might be of sufficient severity to require the imposition of a substantial prison sentence. We give some consideration to both of these factors and conclude that the trial court on remand should consider whether some reduction might be made in the amount of the bond. In reaching this conclusion appellant should state, as he has not done heretofore, either in the trial court or on appeal the amount of bond he, or his associates, are able and willing to put up. Clearly the magnitude of the offenses and appellant's loose ties to the community call for a very substantial bond, but we feel that the court that decides this matter is entitled to consider appellant's suggestion on the size of the bond. We realize that this may well prove in the judgment of the trial court to be an insufficient amount in view of the severity of the offense, in which event appellant will be confined until trial. The Government has moved for an expedited trial.

We accordingly remand the case to the District Court for consideration in accordance with this opinion.

1. Financial conditions are "one of the least favored" of the hierarchy of conditions of release promulgated in 18 U.S.C. § 3146(a) (Supp. V, 1965–69). Wood v. United States, 129 U.S.App.D.C. 143, 145, 391 F.2d 981, 983 (1968). Consequently, it would also be appropriate for the District Court to reconsider on remand the imposition of non-financial conditions that would ensure against flight.

BAZELON, Chief Judge (concurring):

I would also remand this case to the District Court but for somewhat different reasons. Under the Bail Reform Act, 18 U.S.C. § 3146(a) (Supp. V, 1965–69) there is "strong policy in favor of release on personal recognizance" or other non-financial conditions. Wood v. United States, 129 U.S.App.D.C. 143, 145, 391 F.2d 981, 983 (1968). But since it is unclear, to say the least, on the record presently before us whether any non-financial conditions would sufficiently assure the appearance of the appellant,[1]

I would direct the District Court to determine what financial bond the appellant is able to obtain and to state fully the reasons why such bond will or will not "reasonably assure the appearance of the person for trial." 18 U.S.C. § 3146(a) (Supp. V, 1965–69). See Weaver v. United States, 131 U.S.App.D.C. 388, 405 F.2d 353 (1968); United States v. Leathers, 134 U.S.App.D.C. 38, 42 n.16, 412 F.2d 169, 173 n.16 (1969). A financial bond under 18 U.S.C. § 3146 should not be set so that bail bondsmen "hold the keys to the jail in their pockets."[2]

If the financial conditions imposed by the District Court are beyond the reach of the defendant, then this court on the supplemental record on remand will have an adequate basis on which to face the difficult question whether the Bail Reform Act requires release even though available non-financial conditions are inadequate to assure the defendant's presence.

United States v. Leathers, 134 U.S.App. D.C. 38, 40, 412 F.2d 169, 171 (1969); Weaver v. United States, 131 U.S.App. D.C. 388, 405 F.2d 353 (1968).

2. Pannell v. United States, 115 U.S.App. D.C. 379, 380, 320 F.2d 698, 699 (1963) (Wright, concurring); McCoy v. United States, 123 U.S.App.D.C. 81, 82, 357 F.2d 272, 273 (1966).