**UNITED STATES of America**

v.

**Joseph J. NELL and Leonard Weinstein, Surety, Appellants.**

**No. 75–1012.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 28, 1975.

Decided July 21, 1975

William J. Garber, Washington, D. C., for appellant.

Robert P. Palmer, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and James F. Rutherford, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, McGOWAN, Circuit Judge, and EDWARDS,* Circuit Judge for the Sixth Circuit.

Opinion for the Court filed by Chief Judge BAZELON.

Dissenting opinion filed by Circuit Judge McGOWAN.

BAZELON, Chief Judge:

I

Joseph Nell was arrested on April 5, 1974 and charged with carrying a dangerous weapon [1] and with violating both local and federal narcotics statutes.[2] On April 10 he was released into the custody of Leonard Weinstein, a professional bondsman, after Weinstein posted a $10,-000 surety bond. At a June 7 status hearing trial was set for June 12. On June 12 Nell's attorney filed a motion to suppress evidence seized at the time of the arrest; the trial as well as the hearing on the motion were rescheduled for July 17.[3]

On June 19, Nell was rearrested in connection with other offenses.[4] He was released after personally posting a 10% cash deposit on a $1000 bond.

Nell failed to appear in court on July 17, the date set for trial of the original charges against him. The trial judge ordered a bench warrant for his arrest. At the same time, pursuant to Rule 46(e)(1) of the Federal Rules of Criminal

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

1. 22 D.C.Code § 3204.

2. Nell was charged with possession of phenmetrazine, a controlled substance, with intent to distribute it (21 U.S.C. § 841(a)) and with possession of heroin and marijuana (33 D.C. Code § 402).

3. Nell was present at both the June 7 and June 12 proceedings.

4. He was charged after this arrest with possession of heroin with intent to distribute it (21 U.S.C. § 841(a)) and with possession of heroin (33 D.C.Code § 402).

Procedure,[5] the trial judge declared the forfeiture of the $10,000 bond.[6]

On July 24, 1974 Nell was apprehended and was remanded without bond to the District of Columbia Jail. On September 4 he pleaded guilty to one count of narcotics possession with the intent to distribute.[7] Sentencing was postponed pending disposition of other charges against Nell in Superior Court.

On November 14, 1974 Mr. Weinstein, surety on the original bond, moved to set aside the bond forfeiture.[8] At the hearing on the motion Weinstein requested permission to present evidence that a) contrary to customary practice he was not notified by the D.C. Bail Agency of Nell's rearrest on June 19; b) that contrary to customary practice Weinstein had not been notified by the Clerk's Office of the District Court of the July 17 scheduled trial date; c) that Weinstein assisted in finally apprehending Nell; and d) that the apprehension took place within a week of the scheduled trial date.

The trial judge denied both Mr. Weinstein's request for a full evidentiary hearing and his motion to set aside the bond forfeiture. It is from those denials that the instant appeal is taken.

## II

Rule 46(e) of the Federal Rules of Criminal Procedure provides in relevant part as follows:

> 1) . . . If there is a breach of condition of a bond, the district court shall declare a forfeiture of the bail.
> 2) . . . The court may direct that a forfeiture be set aside upon such conditions as the court may impose, *if it appears that justice does not require the enforcement of the forfeiture.* [emphasis supplied].

The mandatory quality of 46(e)(1) is thus considerably tempered by the discretion and flexibility contained in 46(e)(2).[9] Relevant to the exercise of that discretion are factors such as the willfulness of the defendant's breach of bond conditions,[10] the participation of the bondsman in rearresting the defendant,[11] and the prejudice suffered by the government by the breach of the bond conditions.[12]

It is not our role to prescribe the precise weight to be given to these various factors.[13] Nor do we imply that the factors noted above are the only ones that may be relevant. However, when data bearing on relevant factors is prof-

---

5. See 169 U.S.App.D.C. page ——, 515 F.2d page 1353 *infra* for the pertinent text of this provision.

6. The bond provided in pertinent part as follows:

    The conditions of this bond are that the defendant Joseph J. Nell is to appear before . . . the United States District Court for the District of Columbia . . . in accordance with any and all orders and directions relating to the defendant's appearance in the [instant case] . . .. .. [I]f the defendant fails to obey [this] condition, payment of this bond shall be due forthwith. . . . Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of [the instant case] at the time of such breach and if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court . . . .."

7. The remaining counts were subsequently dismissed.

8. This motion was filed pursuant to Fed.R. Crim.P. 46(e)(2). 169 U.S.App.D.C. page ——, 515 F.2d page 1353 *infra* for the text of that provision.

9. *See* Larson v. United States, 296 F.2d 167 (8th Cir. 1961); United States v. Davis, 202 F.2d 621 (7th Cir.), cert. denied, 345 U.S. 998, 73 S.Ct. 1141, 97 L.Ed. 1404 (1953).

10. See United States v. Foster, 417 F.2d 1254, 1257 (7th Cir. 1969); United States v. Harrell, 415 F.2d 1125, 1126 (8th Cir. 1969); Babb v. United States, 414 F.2d 719, 724 (10th Cir. 1968); Smaldone v. United States, 211 F.2d 161 (10th Cir. 1954).

11. Smith v. United States, 357 F.2d 486, 490 (5th Cir. 1966); Larson v. United States, *supra* note 9 at 171.

12. United States v. Foster, *supra* note 10 at 1257; United States v. Harrell, *supra* note 10 at 1126; Larson v. United States, *supra* note 9 at 171; Dudley v. United States, 242 F.2d 656, 658 (5th Cir. 1957).

13. See United States v. Foster, *supra* note 10 at 1256.

fered, the holding of an evidentiary hearing is essential to an informed exercise of discretion based on "what is right and equitable under the circumstances and the law." [14]

██ Given the proffer made in the instant case, it was error for the trial judge not to have held an evidentiary hearing on Weinstein's motion.[15] Elucidation of the issues raised by the proffer—the asserted departures from customary practice by the Bail Agency and the Clerk's Office,[16] Weinstein's assistance in apprehending Nell, and the delay and prejudice suffered by the government from the breach of the bond condition—was essential to determine whether "justice require[d] the enforcement of the forfeiture."

Accordingly, we remand the case to allow the trial judge to hold an evidentiary hearing on Weinstein's motion to set aside the bond forfeiture.

McGOWAN, Circuit Judge (dissenting):

Rule 46(e), Fed.R.Crim.P., by mandating the forfeiture of the bond in the first instance, makes the bondsman an insurer of the appearance of the defendant at trial. This strict liability is made subject only to a broad discretion reposed in the trial judge to remit forfeiture on an affirmative showing that "justice does not require" its enforcement. On this record I cannot say that the judge's discretion was abused, or that that discretion would be significantly informed by further proceedings upon remand.

At the hearing on the motion to set aside the forfeiture, there was no formal proffer of proof, but only a suggestion that the bail agency may have a voluntary practice of notifying the bondsman of the rearrest of his client.[1] It was also suggested that the bondsman was not notified by the Clerk of the Court of the setting of the trial on July 17, 1974, although neither was there any claim in this regard, as there could not be, that the Clerk, having notified the defendant, was under any further obligation to notify the bondsman of this fact.[2] The trial court, properly concerned about the problems involved in shifting from pro-

---

**14.** Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931). Cf. International Harvester Company v. Ruckelshaus, 155 U.S.App.D.C. 411, 478 F.2d 615, 652 (1973) (Bazelon, C. J., concurring in result); Environmental Defense Fund v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584, 598 (1971).

This court has frequently recognized the serious problems and potential inequities in the bail bond system as it actually operates. E. g., McCoy v. United States, 123 U.S.App.D.C. 81, 357 F.2d 272 (1966); see also United States v. Cook, 143 U.S.App.D.C. 1, 442 F.2d 723, 725 (1970) (Bazelon, C. J., concurring); Pannell v. United States, 115 U.S.App.D.C. 379, 320 F.2d 698, 702 (1963) (Bazelon, C. J., concurring in part and dissenting in part). However, these difficulties of course do not justify giving motions filed by bondsmen under 46(e)(2) anything less than full and fair consideration.

**15.** The trial judge left the implication that his allowing Weinstein's counsel to even make a proffer was unnecessary and gratuitous. "I would have denied [this motion] in any event before I even heard this thing." Hearing Transcript at 5.

**16.** When counsel for Weinstein asserted that the Bail Agency and the Clerk's Office had departed from their customary practices, the trial judge expressed his strong doubts as to whether either unit has any obligation of notification to bondsmen. Hearing Transcript at 3–4. Regardless of whether there is such a duty, an evidentiary hearing would have allowed inquiry into such matters as the true extent of the asserted practices and whether they are followed on a formal or informal basis. Such information might well bear on the justifiability of Weinstein's reliance on the Bail Agency and the Clerk's Office and in turn on whether "justice . . . require[d] the enforcement of the forfeiture."

**1.** MR. GARBER: Your Honor, I believe it is—and I think Mr. Weinstein can indicate this, it has been—the policy, at least as far as he knows, in the Bail Agency, when a man has been rearrested to notify the bondsman of the rearrest.

THE COURT: It may be an act of courtesy, but they are not required to do it.

MR. GARBER: No.

**2.** The only other suggestion made to the District Court of a mitigating factor was counsel's statement that appellant "tells me that he did take steps and he assisted in the apprehension of this man within five days." For present purposes we may take this to be true, but it would not, in my judgment, demonstrate on this record an abuse of discretion.

fessional bondsmen to public officials the burden of keeping track of defendants out on bond, thereupon decided to deny the motion.

The court's discretion does not seem to me to have been abused under these circumstances, nor would it be if it reached the same result after the bondsman were to testify on remand that he had some reason to hope that official personnel would always notify him of his client's comings and goings.