**AMERICAN BANKERS INSURANCE COMPANY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 89–1474.**

District of Columbia Court of Appeals.

Argued Feb. 20, 1991.
Decided Sept. 13, 1991.

William F. Krebs, with whom Charles F. Daum was on the brief, for American Bankers Ins. Co.

Kathleen O'Connor, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Elizabeth Trosman, and Barbara Anne Grewe, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN and SCHWELB, Associate Judges, and BELSON, Senior Judge.*

---

* Judge Belson was an Associate Judge of the court at the time of argument. His status

BELSON, Senior Judge:

Appellant American Bankers Insurance Company ("ABI"), the surety on the appearance bond of Kenneth McFarlane, appeals the trial court's denial of ABI's motion to reconsider the forfeiture of McFarlane's bond that was invoked when McFarlane failed to appear for trial. ABI contends that it should not be liable on the forfeited bond for two reasons. First, ABI asserts that it did not receive notice of the forfeiture until nearly thirteen months after the entry of forfeiture and one month after the government had decided to *nolle prosequi* the case. Thus, ABI argues, it was effectively denied the opportunity to be exonerated from liability on the bond by surrendering McFarlane into custody. Second, ABI asserts that before the appearance bond at issue was executed, it had revoked the authority of Eston (Mickey) Lewis, who had executed it, to write bonds as the agent of ABI and that it had informed the Clerk of the Superior Court of this revocation. Thus, ABI argues, it should not be held liable for actions that Lewis took on his own account, and the forfeiture should be vacated. We reject both contentions and affirm the trial court's order.

I.

The government charged defendant McFarlane with possession with intent to distribute marijuana. Lewis, purporting to act as an agent of ABI, executed on April 2, 1987, an appearance bond in the amount of $25,000 to secure McFarlane's return, but did not attach a specific power of attorney executed by ABI naming Lewis as its "attorney." Like other bondsmen, Lewis was permitted to write bonds on behalf of only one company, in his case ABI. When Lewis executed the bond that figures in this case, he wrote on it the letters "A.B.," a two initial code assigned to him by the court that indicated that ABI was the surety on the bond which he wrote. His entry

changed to Senior Judge on July 24, 1991.

read, in full: "A.B., Eston L. Lewis, Attorney-in-fact."

McFarlane failed to appear at a status hearing on April 23, 1987 because he was incarcerated in Norfolk, Virginia. After his release by the authorities in Norfolk and after a status hearing at which he was present and signed a release order, McFarlane appeared for trial on September 22, 1987. The trial court granted the government's motion for a continuance and moved the trial date to October 27, 1987. McFarlane failed to appear for trial on October 27, 1987. The trial court ordered the bond forfeited and issued a bench warrant for McFarlane's arrest. Just one year later, on October 27, 1988, the government decided to *nolle prosequi* the case.

The Financial Revenue Officer of the Superior Court sent a notice of forfeiture to Lewis on November 21, 1988. Lewis filed a specific power of attorney from ABI and a motion to set aside and vacate forfeiture of bond on December 12, 1988. Meanwhile, the Finance Office of the Superior Court contacted Mardis Mitchell, an authorized agent of ABI, and informed him that failure to make good on the bond executed by Lewis would result in the suspension of ABI's and Mitchell's ability to write bonds pursuant to Rule 116(b)(4) of the Superior Court Rules for Criminal Procedure. Mitchell paid the forfeited bond with funds provided by ABI on December 14, 1988, without contesting the forfeiture at that time. On December 15, 1988, the trial court denied Lewis' motion without a hearing. On February 3, 1989, ABI filed a motion to reconsider the motion to set aside the forfeiture.[1] At an evidentiary hearing on April 13 and 14, 1989, ABI presented evidence that it had revoked Lewis' authority to write bonds in its behalf by telling Lewis that his authority had been revoked and informing the Clerk of the Court of this revocation by telephone and by letter. The Clerk of the Court, however, denied ever receiving the telephone call or the letter prior to the hearing. Although the letter generally informed the Clerk that

Lewis' authority had been revoked, it also stated that ABI would honor specific bond power numbers previously given to Lewis that were listed on an attachment to the letter. The number of the bond that figures in this case, however, was not on that list. Lewis also testified, denying that ABI had ever revoked his authority to write bonds on its behalf. Finding that ABI failed to produce "any documentation or evidence of specific, precise, and clear revocation of authority," the trial court held that ABI was bound by the acts of its agent "even if the agent is acting without authority, but under the color of apparent authority." The trial court further found that ABI had ratified the acts of Lewis by paying the $25,000 forfeited bond and concluded that ABI "cannot now disavow the acts of their agent that they have ratified by payment." Thus, the trial court denied ABI's motion to set aside the forfeiture.

## II.

Relying on Superior Court Criminal Rules 116(b)(3) and 116(h)(3), ABI contends that the Clerk of the Court had a duty to notify ABI of the order of forfeiture and that the Clerk's failure to do so until nearly thirteen months after the fact denied ABI its right to due process. Rule 116(b)(3) provides that a bondsman's authority to write bonds will be suspended automatically fourteen days after a bond is forfeited. Super.Ct.Crim.R. 116(b)(3). ABI argues that Rule 116(b)(3) thus requires that "some type of notice" must be given to the bondsman so that he may take action to produce the defendant or pay the forfeited bond prior to the suspension's taking effect. The explicit language of Rule 116(b)(3), however, does not provide that the court must give notice of the forfeiture.

Rather, such notice would be redundant in light of the responsibility accepted by a surety when it executes an appearance bond for a defendant—that "the surety will undertake that the defendant will appear

---

1. ABI took many of the actions that figure in this case through its managing general agent, Bail USA. Because that is not relevant to the resolution of this appeal, we will usually refer for the sake of simplicity solely to ABI.

personally and at a specified time and place to answer the charge made against him." 8 Am.Jur.2d *Bail and Recognizance* § 62, at 635 (1980). It is the surety's obligation to ensure that the defendant actually appears, *id.* § 101, at 659, and to find out if he does not. *United States v. Felix–Meza,* 825 F.2d 1334, 1336 (9th Cir.1987); *United States v. Vera–Estrada,* 577 F.2d 598, 600 (9th Cir.1978); *United States v. Marquez,* 564 F.2d 379, 380 (10th Cir.1977); *United States v. Payne,* 272 F.Supp. 939, 941 (D.C.Conn.1967); *see also* 3A C. Wright, Federal Practice and Procedure § 776, at 175 (2d ed.1982). The surety's constructive knowledge of the defendant's failure to appear is equivalent to notice to the surety that the bond will be forfeited pursuant to the mandatory provisions of Rule 116(h)(1).[2]

■ ABI also contends that the Superior Court failed to follow the procedures set forth in Rule 116(h)(3), which requires that execution of a bond forfeiture be sought by motion and that the Clerk of the Court mail the surety copies of the notice of the motion to enforce the forfeiture. The record, however, belies ABI's contention. On November 21, 1988, the Finance Office of the Superior Court sent a letter to Spencer Douglass Insurance Associates, managing general agent for ABI, with a copy to Lewis, notifying them that the bond had been forfeited and that payment of the forfeited bond was due by December 5, 1988. This letter gave ABI adequate notice that the forfeiture would be enforced. In fact, ABI contacted the Superior Court to obtain information about the forfeited bond and subsequently filed a motion to reconsider bond forfeiture or in the alternative to remit forfeiture. Furthermore, the trial court granted ABI a hearing at which it had the opportunity to prove that the forfeiture should be set aside. Thus, ABI received notice of the forfeiture and had an opportunity to be heard that satisfied due process requirements.

## III.

■ ABI also contends that the trial court abused its discretion when it denied ABI's motion to set aside the forfeiture. Whether the trial court should set aside a forfeiture of a personal appearance bond is within the trial court's sound discretion, and the trial court's decision will be reversed only upon a showing of abuse of discretion.[3] *Nell, supra* note 2, 169 U.S.App.D.C. at 382, 515 F.2d at 1353; *cf. Henderson v. District of Columbia,* 169 A.2d 759 (D.C.1961). Factual determinations upon which the trial court bases its exercise of discretion will not be disturbed, unless they are plainly wrong or unsupported by evidence of record. D.C. Code § 17–305(a) (1989); *see also Auxier v. Kraisel,* 466 A.2d 416, 418 (D.C.1983); *Springer v. Springer,* 248 A.2d 822, 823 (D.C.1969).

■ ABI argues that the trial court clearly erred in finding that Lewis executed the bond on ABI's behalf, that ABI failed to dispel effectively the appearance of authority with which ABI had cloaked Lewis, and that ABI ratified Lewis' action by payment of the forfeited bond. After conducting an evidentiary hearing, the trial court ruled that Lewis had had apparent authori-

---

**2.** Rule 116(h)(1) provides that "[i]f there is a breach of condition of a bond, the Court *shall* declare a forfeiture of the bail." Super.Ct.Crim.R. 116(h)(1) (emphasis added); *cf. United States v. Gutierrez,* 771 F.2d 1001, 1003, (7th Cir.1985) (Fed.R.Crim.P. 46(e)(1), analogous to Super.Ct.Crim.R. 116(h)(1), requires a trial court to order forfeiture of the bond upon a breach of one of its conditions); *Appearance Bond Surety v. United States,* 622 F.2d 334, 336 (8th Cir.1980); *United States v. Stanley,* 601 F.2d 380, 382 (9th Cir.1979) (same); *Jeffers v. United States,* 588 F.2d 425, 426–27 (4th Cir.1978) (same); *United States v. Nell,* 169 U.S.App.D.C. 380, 382, 515 F.2d 1351, 1353 (1975); C. Wright, *supra,* § 776, at 173.

**3.** The court in *Nell, supra* note 2, listed several factors that are relevant to the exercise of the trial court's discretion in determining whether to set aside forfeiture: 1) "the willfulness of the defendant's breach of bond conditions"; 2) "the participation of the bondsman in rearresting the defendant"; and 3) "the prejudice suffered by the government by the breach of the bond conditions." 169 U.S.App.D.C. at 382, 515 F.2d at 1353. We note that none of these factors favored a ruling by the trial court to set aside the forfeiture of ABI's bond.

ty to execute the appearance bond in this case. The evidence presented established that ABI had executed and filed with the Superior Court a general power of attorney authorizing Lewis to write bonds in its behalf without any requirement that an individual specific power of attorney be filed in each case.[4] Therefore, at the time the bond was executed, the Superior Court Clerk's Office personnel reasonably believed that ABI had consented to Lewis' exercise of authority. *See Management Partnership, Inc. v. Crumlin*, 423 A.2d 939, 941 (D.C.1980) ("apparent authority arises when a principal places an agent in a position which causes a third person to reasonably believe that the principal consented to the exercise of authority the agent purports to hold") (citations omitted); *Insurance Management, Inc. v. Eno & Howard Plumbing Corp.*, 348 A.2d 310, 312 (D.C.1975); *Jack Pry, Inc. v. Drazin*, 173 A.2d 222, 223 (D.C.1961).

To negate Lewis' apparent authority, ABI was required to inform the Clerk of the Superior Court that it had done so. *See Eno & Howard Plumbing Corp., supra*, at 312 (a principal remains liable for its agent's actions until it informs third parties that its agent lacks authority to act on its behalf). Harvey Childs, the president of Bail USA, a subsidiary of ABI, testified that he had telephoned "somebody in the Court" and that he had sent a letter dated February 25, 1987, to the Clerk of the Court to notify the Court that ABI had revoked Lewis' authority to write bonds in its behalf. The letter did state generally that ABI revoked Lewis' authority, but also indicated that ABI intended to honor bail bonds executed by Lewis using outstanding specific powers of attorney in

Lewis' possession as listed in an attachment. The number of the specific power of attorney used in this case was not listed in the attachment. Testifying in opposition to the motion, Frederick Beane, Clerk of the Court, stated that "the Court was not in receipt of any letter or other communication revoking the agency authority of Eston Lewis by [ABI] and further the Court did not receive [ABI's] letter of February 25, 1987, until a copy was delivered by Mardis Mitchell on December 12, 1988."

The trial court did not find specifically whether the letter was received by the Court or not, but noted that the letter did not void or revoke Lewis' authority, but that Lewis had the authority to use specific powers of attorney in his possession. Rather the trial court found that the letter did not contain a "specific, precise, and clear revocation of authority," and thus that ABI had not informed the Superior Court Clerk's office that Lewis' authority had been revoked. These findings were not plainly wrong or without support in the record.[5]

Considering all of the foregoing, we are satisfied that the factual bases for the trial court's exercise of discretion were not plainly wrong or without support in the record, and that the trial court did not abuse its discretion in denying ABI's motion to vacate the forfeiture.

*Affirmed.*

---

**4.** ABI asserts that the bond in this case was not properly executed because a specific power of attorney was not filed as required by the unpublished internal operating procedures of the Superior Court. ABI argues that it relied on this practice to protect itself against dishonest bonding agents. However, this practice was assumedly not adopted to protect the bonding company against a dishonest agent because, as ABI acknowledged, the agent rather than the court is required to send a copy of the specific power to the bonding company. Thus, it is unlikely in this case that Lewis would have sent

ABI a copy of the specific power in light of the fact that he never sent ABI the premium for the bond. It seems clear that the provision was adopted to protect the court rather than the bonding company.

**5.** The trial court further ruled that ABI had ratified Lewis' action by payment of the forfeited bond. In view of our holding as to apparent authority, we need not reach the issue of ratification.